## AMERICAN ENGINEERING CO. v. E. H. BARDES RANGE & FOUNDRY CO.

### No. 973.

District Court, S. D. Ohio, W. D.

March 16, 1938.

624

Wood &· Wood, of Cincinnati, Ohio, and Charles H. Howson and Carl F. Sibbe, both of Philadelphia, Pa., for plaintiff.

Kunkel & Kunkel and Murray, Sackhoff, Zugelter & Paddack, all of Cincinnati, Ohio, for defendant.

NEVIN, District Judge.

This is a patent suit. Plaintiff, American Engineering Company, filed its bill of complaint on March 25, 1936. Subsequently, amendments to the bill were filed. Defendant filed its answer on September 29, 1936, but later, on October 6, 1936, with the consent of plaintiff, defendant filed a substituted answer.

The bill of complaint and amendments thereto, set forth a number of patents, to which plaintiff claimed ownership and all of which it claimed defendant was infringing. Prior to the trial of this cause (July 1 and 2, 1937) the parties hereto had agreed that a consent decree might be entered as to all of the patents, except the one now in issue. On July 1, 1937, that consent decree was signed by the court and entered herein.

The only patent now in suit therefore, is patent to William J. Hughes, No. 1,930,-897. The bill charges infringement. In its answer, defendant denies infringement and attacks the validity of the patent. The principal issue in the case however is: Does defendant's Tuyère Block, as exemplified by Plaintiff's Exhibit 30 and Defendant's Exhibit "A", infringe the Hughes patent.

Hughes patent, No. 1,930,897, is for a Tuyère Block. A row of tuyère blocks, assembled for use, is called a tuyère (a French word, pronounced "tweer"). Hughes, in his Patent, states, that "My invention relates to tuyeres for boilers equipped with mechanical coal feeding means and to which the air for combustion is supplied under pressure". It appears from the patent and the evidence that steam boilers of large capacity are customarily equipped with apparatus or stokers, whereby the coal used as fuel is introduced into the fire box under the boiler automatically and mechanically by the use of reciprocating plungers, which operate to force the coal from a hopper through conduits into the fire box. Between the channels of each pair of adjacent coal conduits there is disposed means for the introduction of air into the coal, whereby the coal may unite with the air and burn. The means commonly employed for admission of air into the coal consists of a series of flat plates or tuyere members superposed in stepped rows one above the other between the coal channels. The tuyeres have suitable openings or passages therethrough, connecting with the air box, of which the row of tuyere members form a wall, whereby the air may flow from the air boxes into the mass of coal. The tuyeres for the sake of cheapness are made of cast metal and are disposed in the hottest part of the fire box where the temperature runs very high. Where, therefore, the tuyere members have had their discharge passages or channels extended to the edge of the toe or forward portion, it is claimed a forging effect is produced at the forward end with the result that the coal is heated to the melting point of the ash, and, when the ash melts, it flows downwardly on the tuyeres and closes the air discharge passages or channels thereof. This causes the tuyere members to be quickly burned and disintegrated so that replacements are almost constantly necessary.

Hughes claims that one of the objects of his invention is "to provide a tuyere member or block which shall be largely free from the tendency to clog and burn" and, that another is "to provide an improved tuyere member for use at the top of each row of main or primary tuyere members, whereby the main or primary tuyeres, are effectively protected from slag formation".

Hughes patent, No. 1,930,897, contains 6 claims—all are in issue. It is agreed however, that claims 2 and 5 are typical. They read as follows:

"2. A tuyere block having a substantially horizontal fuel-supporting portion, and means defining air channels on the under side thereof, said channels terminating at a point inwardly of the edge of said fuel-supporting portion."

"5. A tuyere block, comprising a substantially flat fuel supporting portion, having on its nether side depending means defining air channels, said means terminating inwardly of the edge of said fuel supporting portion, and the ends of said means and the projecting edge of said fuel supporting portion forming in effect a channel which communicates with said first mentioned air channels."

It is conceded that a tuyere block with fins extending clear to the outer edge is old in the art.

Plaintiff claims that Hughes' invention consisted in the setting back of the fins to provide a transverse channel for the purpose of keeping those channels open when a curtain of slag forms at the edge—that the contribution of Hughes is the provision at or adjacent the edge of a transverse passage or channel which connects the longitudinal channels with the function of keeping them all open even though a curtain of slag should hang over the edge of the tuyere and block some of them. Plaintiff claims that this concept was new; that nothing in the art approached it.

Defendant asserts that, the general "set-up" is old in the art, and that also it is old in the art to have a tuyere in which the veins or ribs extended in a radiating way clear out to the edge of the tuyere block; that the contribution of Hughes was the termination of those ribs inward of the outer edge of the tuyere, and urges as its principal contention herein that, in the prosecution of his application Hughes strictly limited himself to a construction wherein those ribs terminated with the edge of the tuyere block, and that, if the rib runs out to the edge of the tuyere, there is and can be, no infringement. The record (Page 17) shows:

"Mr. Murray: * * * that is the point which will be the main point in our contention, Your Honor, of non-infringement.

"The Court: You claim that anything that goes beyond that does not infringe.

"Mr. Murray: If it goes out to the edge of the tuyere it does not infringe, that is, if the rib runs out to the edge of the tuyere, as ours do, there is no infringement." * * *.

Defendant further contends that Hughes attempted repeatedly to get a claim covering what plaintiff's counsel now states is the real invention of Hughes,

(Rec. p. 18) "that is, to have a channel or passageway between the ribs so that he could get a flow of air from one passageway into another passageway in case the ash, the melted ash obstructed the end of the passageway, that is, by falling over the edge of the tuyere" but that it was rejected by the Patent Office examiner. Defendant asserts that Hughes took no appeal but cancelled these claims, and defendant insists that, what plaintiff is now seeking is to have the court construe the present claims to be as broad as, and to cover the claims which were cancelled; that Hughes took these narrow or limited claims in order to get his patent and now asks the court to so construe them as to make them of the same scope as the cancelled claims. In support of its contention, defendant offered in evidence Exhibit "E" —the file wrapper and contents.

While it is well settled that where a patentee, as disclosed in the file wrapper and contents, in order to get his patent, accepts one with a narrower claim than that contained in his original application that the claim as allowed must be read and interpreted with reference to the rejected claim and to the prior state of the art, and cannot be so construed as to cover either what was rejected by the Patent Office or disclosed by prior devices, Leggett v. Avery, 101 U.S. 256, 25 L.Ed. 865; Shepard v. Carrigan, 116 U.S. 593, 6 S.Ct. 493, 29 L.Ed. 723; Knapp v. Morss, 150 U.S. 221, 227, 14 S.Ct. 81, 37 L.Ed. 1059, it is equally true that "where the differences between the claim as made and as allowed consist of mere changes of expression, having substantially the same meaning, such changes, made to meet the views of the examiners, ought not to be permitted to defeat a meritorious claimant. While not allowed to revive a rejected claim by a broad construction of the claim allowed, yet the patentee is entitled to a fair construction of the terms of his claim, as actually granted." Hubbell v. United States, 179 U.S. 77, 80, 21 S.Ct. 24, 25, 45 L.Ed. 95; Edwards Mfg. Co. v. National Fireworks Distributing Co., 6 Cir., 272 F. 23; National Tube Co. v. Mark et al., 6 Cir., 216 F. 507, 522.

It is unnecessary to enter into a detailed discussion of the record in the Patent Office. It speaks for itself. It is sufficient here to observe that the claims refused were not objected to nor rejected, on any art. The objections were (as coun-

sel for plaintiff states—Rec. p. 27) informal, that is to say, the claims as first presented, did not answer to the requirements of the Patent Office in matters of form. The claims rejected and allowed had substantially the same meaning. Under such circumstances the changes "ought not to be permitted to defeat a meritorious claimant." Hubbell v. U. S., supra.

While the validity of the patent in suit is challenged by defendant in its answer, this defense was not stressed, nor pressed, in fact counsel for defendant (Mr. Murray—Rec. p. 17) refers to the "contribution to the art" made by Hughes. Defendant produced no evidence attacking the validity of the patent on any ground. A few patents were offered in evidence by defendant to show the state of the art, but not for the purpose of anticipating the claims of the Hughes patent. (Rec. p. 115.) The evidence clearly establishes the validity of plaintiff's patent. As indicated the defense relied upon is noninfringement. Defendant's constructions embody the Hughes invention in every essential respect. It seems (as claimed by plaintiff) apparent that defendant retained the essence of the Hughes invention in each of its altered constructions, and that these constructions are clearly the mechanical equivalents of that shown in the patent.

Decree accordingly.