**MUELLER et al. v. CAMPBELL et al.**

Civil Action No. 279.

District Court, S. D. Ohio, W. D.

April 22, 1946.

F. O. Richey and H. F. McNenny, of Richey & Watts, all of Cleveland, Ohio, and Joseph D. Chamberlain, of Dayton, Ohio, for plaintiffs.

John J. Mahoney, of Corbett, Mahoney & Miller, all of Columbus, Ohio, for defendants.

NEVIN, District Judge.

On September 10, 1945, plaintiffs filed a "Motion for Rule to Show Cause why Defendant, Harold C. Campbell, should not be attached, and/or fined for Contempt of Court."

In their motion, plaintiffs "move this court for a rule upon the defendant, Harold C. Campbell, to show cause why he should not be attached and/or fined for contempt for violation of the judgment and injunction heretofore entered and granted in this cause."

On September 21, 1945, plaintiffs filed a "Motion for Rule to Show Cause Why Defendant, H. D. Thomas, doing business as The Thomas Company, should not be attached and/or fined for contempt of court."

In the above motion plaintiffs "move this court for a rule upon the defendant, H. D. Thomas, doing business as The Thomas Company, to show cause why he should not be attached and/or fined for contempt for violation of the judgment and injunction heretofore entered and granted in this cause."

In each of the foregoing motions plaintiffs have set forth the grounds upon which the respective motion is based. These grounds are substantially the same in both motions. It is unnecessary to repeat the details here. It is sufficient to say that plaintiffs' claim that defendants and each of them have violated an order of this Court theretofore entered in the form of a perpetual injunction on August 1, 1945.

This perpetual injunction conformed to a judgment and interlocutory injunction entered in this case on July 30, 1945. The interlocutory judgment and the perpetual injunction both were based on the decision, findings and conclusions of this Court rendered on June 23, 1945, 68 F.Supp. 464, in a patent suit wherein plaintiffs charged defendants with infringement of Hunt Patent No. 2,300,157, and particularly of Claims 2, 3, 7, 10, 12, 14, 16, 17 and 19 thereof, therein in issue. With and in support of their respective motions plaintiffs filed the affidavits of several persons.

On September 11, 1945, on plaintiffs' motion and accompanying affidavits, the Court entered a "Rule to Show Cause" directed to defendant, Harold C. Campbell and on September 26, 1945, on plaintiffs' motion and accompanying affidavits, a similar "Rule to Show Cause" was entered as to the defendant, H. D. Thomas, doing business as The Thomas Company.

In each and both instances, the defendants were ordered to be and appear before the Court on November 5, 1945, at 10:30 A.M., (continued by agreement to December 5, 1945) "to show cause, if any he has, why he should not be punished for contempt of court in violating the order of injunction contained in the judgment entered by this Court in the above cause on July 30, 1945."

Defendants and each of them were enjoined inter alia "from directly or indirectly infringing upon the said Letters Patent by making, selling or using poultry

picking machines exemplified by Plaintiffs' Exhibit 16, or equivalents thereof, from advertising or from in any way infringing upon or contributing to the infringement of any of said claims 2, 3, 7, 10, 12, 14, 17 and 19 of said Letters Patent."

On November 10, 1945, defendants filed their answer to the respective Rules to Show Cause in which they "deny that they have violated the injunction issued out of this Court on August 1, 1945, conforming to the interlocutory injunction entered in this case on July 30, 1945, and move that the said motions for rules to show cause be discharged at plaintiffs' costs, for the reasons set forth in the attached affidavits of Heyward D. Thomas and Harold C. Campbell, and the accompanying brief filed herein on behalf of defendants."

Since the decision of the Court and the issuance of the injunction defendants have proceeded to manufacture and sell what they call "modified structures."

In their Brief (pp. 49, 50) counsel for defendants say: "The defendants in this case are not charged with violation of the injunction by making, selling· or using the precise device held to be an infringement by the Court. The controversy now before the Court relates to modified structures which have been made by the defendants. The modified structures are not the same as that held to be an infringement by the Court at the trial."

Defendants further assert (Br. pp. 50, 51) that: "By the overwhelming weight of authority in the Federal Courts where such a situation as herein described arises where the question of infringement and validity of the modified structures is in question the courts will not decide the matter on contempt proceedings. The defendants having made a change which they believe avoids the Hunt patent and having acted honestly and on advice of counsel are entitled to their day in court. They should not be held for contempt in such a situation on ex parte affidavits. The motions for contempt should therefore be discharged and the plaintiffs left to their right to file a supplemental bill herein, or to file a new suit in order to test out the question of validity and infringement of the modi-

fied structures." (Citing) Enterprise Manufacturing Co. of Pennsylvania v. Sargent et al., C.C., 48 F. 453, 454; Crown Cork & Seal Co. of Baltimore City v. American Cork Specialty Co., et al., 2 Cir., 211 F. 650 at 653; Temple Pump Co. v. Goss Pump & Rubber Bucket Mfg. Co., C.C., 31 F. 292, 293; Otis Elevator Co. v. 570 Building Corp., et al. (Staley Elevator Co. Inc., Intervener), D.C., 26 F.Supp. 900 at 901; Westinghouse Air Brake Co. v. Christensen Engineering Co., C.C.N.Y., 126 F. 764 at 765.

But, as reference to them will disclose, even in the authorities just cited, the rule for which defendants contend does not prevail, where "the change was plainly a mere colorable equivalent," Crown Cork & Seal Co. of Baltimore City v. American Cork Specialty Co., supra; Otis Elevator Co., v. 570 Building Corp. et al., supra; nor where the infringement by the new device is clear "on the face of the matter." Radio Corporation v. Cable Tube Corp., 2 Cir., 66 F.2d 778, 783.

However, further discussion of this subject is of no present importance because as plaintiffs point out, whatever the rule may be elsewhere, there is no doubt that in this (Sixth) Circuit, the rule is that it is proper to consider the modified structure in Contempt Proceedings.

In Field Body Corp. v. Highland Body Manufacturing Co., 6 Cir., 13 F.2d 626, the Court (Page 627) say: "This is an appeal from an order adjudging appellant in contempt of court for violating an injunction against infringement of patent * * *. We are not concerned with the prior art, nor with an original interpretation of the claims of the patent. It suffices here that in an action between the parties the patent was held infringed by appellant's original structure. The question, then, is whether the modified structure is the equivalent of the original in its relation to the patent in suit. Appellant contends that it is materially different." * * *

In Wadsworth Electric Manufacturing Co. Inc., v. Westinghouse Electric & Mfg. Co., 6 Cir., 71 F.2d 850 the court states (Page 851): "The question in proceedings for contempt for violation of an injunction

against infringement is not one which relates to or involves the original interpretation of the claims of the patent. Field Body Corporation v. Highland Body Mfg. Co., 6 Cir., 13 F.2d 626. It suffices that in an action between the parties the patent was held valid and infringed, and the question is only whether the modified structure is equivalent to the original in relation to the patent in suit."

■ Defendants further submit that plaintiffs' contention that defendants' modified structures are the equivalent of the device which was held to infringe in the original patent suit cannot be sustained because of "file wrapper estoppel."

It is their position that Hunt's patent covers only "hollow fingers" whereas, defendants assert, in their present "modified structures" they employ or use "solid" fingers. As to this defendants (Br. Pp. 10 et seq.) say: "An examination of the file wrapper of the Hunt patent shows that when Hunt filed his application it contained original claims which would have read upon defendants' modified structures if such claims had been allowed by the Patent Office," but that some of his original claims were rejected and that amendments were thereafter filed so that "It is clear from this file wrapper history that Hunt attempted to obtain claims which would have read on a chicken picker machine having solid fingers or upon a finger per se which would be solid, but he could not obtain these claims because they were met by the prior art," and defendants submit that "Hunt cannot now read that limitation out of his claims to broaden his patent and then hold the defendants who are using the prior art solid finger structure for infringement."

However, claims 3, 14, 17 and 19 (of Hunt Patent No. 2,300,157 in suit) do not recite the hollow feature which is found in some of the other claims.

Plaintiffs' position with respect to this particular question is set forth in their brief (Pp. 17 et seq.) as follows: "A patent claim must be interpreted in the light of the specification, Hawkinson v. Wilcoxen, 6 Cir., 149 F.2d 471, 475, where Judge Hicks, speaking for the Court, said:

'The claims of a patent are always to be interpreted in the light of its specifications and drawings. This canon of construction is as old as the patent law itself * * *.'

"The specification of the patent in suit says as follows (p. 2, first column, 1s. 62-67): 'Also, it has been found that a solid finger of the kind described will remove feathers satisfactorily, but the operation is further speeded up if a tapered bore 40 is formed in each finger, with the taper decreasing inwardly as shown in Fig. 3.' (See also p. 2, col. 2, 1s. 56-68).

"Therefore, under this rule of law, defendants cannot escape infringement by the claim that the 'Pioneer' finger is solid.

■ "When we consider the claims in suit we find they are grouped into three classes as follows:

"The first group consists of claims 3 and 17 which read upon the 'Pioneer' machine without any resort to the doctrine of equivalency since these claims read verbally upon this device;

"The second group consists of claims 14 and 19 which are devoted to the finger per se. These claims also read upon the finger of the 'Pioneer' machine without any resort to the doctrine of equivalents, though of course the doctrine of equivalents would be as applicable to meet any verbal quibbles as in connection with the first accused machine;

"The third group includes claims 2, 7, 10 and 12. Claims 2 and 12, for example, refer to the hollow in the finger, and claim 10, for example, refers to the bore in the finger. Here the doctrine of equivalency applies. E. H. Bardes Range & Foundry Co. v. American Express Co., 6 Cir. 109 F.2d 696, 698. Ives v. Hamilton, 92 U.S. 426, 430, 23 L.Ed. 494.

"The 'Pioneer' machine is nearer the particular embodiment of the patented machine illustrated in the patent in suit than was the 'Peerless' machine because the bore in the finger in the 'Peerless' machine is cylindrical throughout the length of the finger, whereas the finger in the 'Pioneer' machine is gradually weakened from the bottom towards the top as is done in the Hunt machine.

"Time and again the patent Courts have pronounced that patent suits were to be decided upon substance and not upon form. Whatever detailed mechanical differences exist between the fingers in these machines is a mere matter of form, whereas the substance of all three is the same as Campbell himself pronounces in his advertisements and his patents. Therefore, there is infringement whether we take the broad view of substance or whether we take the narrower view of words because the words of the first and second groups of claims describe the 'Pioneer' machine, and when the claims of the third group are interpreted in the light of the specification, as Judge Hicks said we must do in Hawkinson v. Wilcoxen, supra, they also read verbally in the sense of the patent law on the 'Poineer' machine. When the claims of the third group are interpreted in the light of the specification of the patent in suit, including the portion appearing at page 2, column 1, lines 62-67, which we have quoted above and which is to the effect that solid fingers are contemplated although the hollow finger was believed by Hunt at the time he drew up his specification to be better than the solid finger, there is infringement on verbal grounds as well as on grounds of substance." In the present instance "there has been no more than a reversal of parts in the fingers."

In Musher Foundation, Inc., v. Alba Trading Co. Inc., 2 Cir., 1945, 150 F.2d 885, at page 887, the Court of Appeals of the Second Circuit (by Judge L. Hand) say: "Of course, the fact that verbally the infringing process is not within the claim is no objection to the application of the doctrine of equivalents; indeed it creates the very occasion which should evoke it. Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 50 S.Ct. 9, 74 L.Ed. 147; Claude Neon Lights v. E. Machlett & Son, 2 Cir., 36 F.2d 574, 575; Black & Decker Manufacturing Co. v. Baltimore Truck Tire Service Corporation, 4 Cir., 40 F.2d 910, 914."

The Court is of opinion and so finds that the claim of defendants that "Defendants' modified structures not equivalents of device held to infringe because of file wrapper estoppel," is not well taken and cannot successfully be asserted here. It does not find support either in law or in the evidence.

We come then to a consideration of the ultimate question here presented. That question is whether the modified structure is the equivalent of the original adjudicated infringement in relation to the patent in suit. If so, the defendants, and each of them, are guilty of Contempt. The question is one of Fact. Field Body Corporation v. Highland Body Mfg. Co., supra; Aluminum Co. of America v. Thompson Products, Inc., 6 Cir., 122 F.2d 796, 799.

In his affidavit (Pp. 2, 3) defendant Campbell makes the following statement: "Deponent (defendant Campbell) states that in constructing his modified machine, he merely used the various prior art elements, such as the drum mounted in a frame, and revolved by an electric motor, and with solid fingers projecting therefrom as in the machines of the prior art. Deponent further says that he therefore does not use the finger of the Hunt patent or the finger shown in plaintiffs' exhibit 16. That the finger now used on the Campbell modified machine is shown in plaintiffs' exhibit J. That reference to the Campbell modified finger J shows that it is entirely different from the finger shown in the Hunt patent and from the finger shown in plaintiffs' exhibit 16. The material difference is that while the finger of the Hunt patent, and of plaintiffs' exhibit 16, is a hollow finger with a longitudinal bore extending therethrough, the modified finger shown in plaintiffs' exhibit J is a solid finger having twice the number of ribs on its outer surface than the infringing finger, plaintiffs' exhibit 16, and that it is obvious from its appearance that it has other differences in shape and contour from the finger of the Hunt patent and the finger of plaintiffs' exhibit 16.

"Deponent further says that the Campbell modified finger, plaintiffs' exhibit J, operates in a different manner to pluck feathers from fowls in that the hollow finger of Hunt and of plaintiffs' exhibit 16, when pressed against the fowl, will flatten out at its free end and present a greater area for contact with the feathers.

On the other hand, the solid finger of Campbell, plaintiffs' exhibit J, will not flatten out nor change its contour when pressed against the fowl but merely arches and depends upon the square shouldered ribs to pull or rub the feathers from the fowl. * * *

"Deponent says that the corrugations on the finger shown on the Hunt patent in suit are in the form of screw threads whereas the corrugations on the modified Campbell finger, plaintiffs' exhibit J, has circular ribs with square shoulders thereon to more effectively grip the feathers of the fowl. * * *

"That with reference to the use of the number of the Hunt patent on deponent's advertisements, advertising his machine, deponent states that this occurred through error and was caused by the fact that he thought he was using the numbers of two Campbell patents, 2,302,525 and 2,311,365, which have issued to him, and that he did not intend to use the number of the Hunt patent in suit on his machines or in his advertisements. That as soon as this was called to his attention, and prior to the issuance of the injunction or service of it on him, he immediately notified the various publishers of the mistake and requested them to see to it that the number of the Hunt patent was removed entirely from his ads. The publishers complied with his requests except in one case the copy had gone to the printers and it was too late to make the change. However, the change was made in the next issue. That he also saw to it that this patent number was removed from all of his patent plates used on his machines. He further states that no further use of the Hunt patent was made after the issuance of the injunction and after this error was called to his attention.

"That with reference to the statements made in the various advertisements as set forth in plaintiffs' affidavit, these statements are general statements as to the operation of the machine and are not in any way statements of operation original with the machine of the Hunt patent as all chicken picking machines have certain common features and functions of operation." * * *

In his affidavit (Pp. 4 et seq.) defendant Thomas states: "Deponent further states that in constructing his modified machine (Peerless) he merely used the various prior art elements such as a drum mounted in a frame and revolved by an electric motor with the solid fingers of the prior art machines such as Richards, and with corrugations thereon as in Bouda. Deponent says that he does not use the fingers of the Hunt patent, or the fingers shown in plaintiffs' exhibit 16. * * * That reference to the Thomas modified finger FF shows that it is entirely different from the finger shown in plaintiffs' exhibit 16. The material difference is in the fact that while the finger of plaintiffs' exhibit 16 is a hollow finger with a longitudinal bore extending throughout, the modified finger shown in defendants' exhibit FF is a solid finger having twice the number of ribs on its outer surface than the infringing finger, plaintiffs' exhibit 16, and has other differences in shape and contour which prove it to be substantially different from the finger of plaintiffs' exhibit 16. Deponent further says that the finger FF of the Thomas modified structure operates in a different manner to pluck feathers from fowl in that whereas the hollow finger of plaintiffs' exhibit 16 when pressed against the fowl will flatten out and present a greater area for contact with the feathers, that is, at the free end of the finger, the solid finger FF of the Thomas modified structure will not flatten or change its contour but merely arches and depends upon the square shouldered ribs to scrape or rub the feathers from the fowl. * * * Deponent says that he has read the Mueller affidavit in this contempt proceeding which refers to various advertisements of The Thomas Company in the Produce Packer as shown in plaintiffs' exhibits 104, 105, 106 and 107, and notes the statement that these various advertisements beginning with July 28, 1945, plaintiffs' exhibit 104, and continuing each month through September, 1945, show the same machine. Deponent says that there is nothing significant about that fact because the defendant Thomas modified his machine a number of months prior to the date the interlocutory decree was handed down. Deponent states

that none of the machines shown in the advertisements, plaintiffs' exhibit 104 to 107, inclusive, are the machines which were held to be an infringement of the Hunt patent in suit, plaintiffs' exhibit 15."

In their brief (Pp. 3 et seq.) counsel for defendants (referring to above) say: "The modified structure now made by defendant Campbell is shown in plaintiffs' exhibit H which is a pamphlet bearing illustrations and descriptions of the modified Campbell machine. The illustrations in this pamphlet are not very clear as to detail, such as the construction of the finger members. However, an illustration of the present Campbell finger is shown on page 4 of the exhibit. The illustration of the finger on this page of the exhibit is a side elevation and does not bring out clearly that the finger is solid. Plaintiffs have offered, however, one of the Campbell fingers as plaintiffs' exhibit J. An examination of this finger member will show that it is a solid rubber finger and not a hollow one as was used on the machine, plaintiffs' exhibit 16.

"The modified Thomas machine is shown in plaintiffs' exhibit 103 which is a circular published by the defendant Thomas. The illustrations of this plaintiffs' exhibit 103 do not clearly bring out the detail of the construction. Particularly, it does not clearly illustrate the type of finger member used on the Thomas modified structure. Neither does plaintiffs' exhibit J, which is the Campbell modified finger, show the precise Thomas finger now being used. Defendant Thomas, however, has offered as part of his affidavit, as defendants' exhibit FF, one of the modified finger structures now being used by him. An examination of this exhibit shows that the Thomas modified finger structure is different from the fingers used on the machine, plaintiffs' exhibit 16, held to be an infringement in that the present Thomas finger is a solid finger whereas the finger on the infringing machine, plaintiffs' exhibit 16, was a hollow finger. * * * The attempt to base infringement upon general statements contained in advertising circulars of defendants giving certain merits of the general operation of the respective machines is not a test of equiv-alency. * * * Plaintiffs have attempted to show that because the numerals 157 were found on a plate on defendants' machines that this constituted infringement of the Hunt patent because these three numerals happened to be the last three digits in the Hunt patent number. However, the affidavit of Campbell shows that before the issuance of the injunction he innocently and mistakenly used the number of the Hunt patent in some of his advertising. As soon as Campbell discovered his error he corrected his circulars and his machine plate."

Plaintiffs, on their behalf, filed the affidavits of C. B. Mueller (a plaintiff herein), H. F. McNenny, Johnnie L. Johnson and Roy C. Potts. Attached to some of these affidavits are certain exhibits (some above referred to).

In his affidavit (filed September 10, 1945) Johnnie L. Johnson states that on August 3, 1945, he ordered a "chicken picker" from the H. C. Campbell Company, Delaware, Ohio, to be delivered to him at Chattanooga, Tenn., and that pursuant thereto he received at Chattanooga, on August 14, 1945, a "1945 Model Pioneer Poultry Picker" from the Campbell Company, and that on the same day he had the machine set up at the Williams Poultry Company, 2400 Broad Street, Chattanooga. He states that this "Picker" is shown on page 3 of exhibit H, (attached to his affidavit).

In his affidavit (filed September 21, 1945) H. F. McNenny testifies as follows: "While at the place of business of H. D. Thomas at 15 E. Winter Street, Delaware, Ohio, (on August 2, 1945) I saw on display there a machine identical in all particulars with the machine shown in the attached circular, Plaintiffs' Exhibit 103, which circular I secured from Mr. Kemp, (who was in charge of the office of the Thomas Company) at the time I saw this machine. * * * The fingers of the display machine were identical with the fingers shown and described in the patent to Campbell and Thomas, 2,376,120 heretofore filed in this case as plaintiffs' Exhibit 102. I compared the machine on display with that illustrated and described in Exhibit 103, in the Hunt patent in suit, and the Campbell patent No. 2,302,525 illustrating and describing the machines held to infringe

and they were the same. * * * The working portions of the fingers projecting from the drum of the said display machine were the same as the finger marked "Plaintiffs' Exhibit J", heretofore filed in this cause with the affidavit of Roy C. Potts. * * * The machine of Exhibit 103, in my opinion, operates the same and gets the same results as both the preferred form of the Hunt machine illustrated in the drawings of the Hunt patent and the Campbell machine held to infringe in this suit. In this I am confirmed by the affidavit of Roy C. Potts filed in this cause on the contempt proceedings against Campbell and by the claims of Thomas in Exhibit 103."

Two affidavits of C. B. Mueller were filed, one on September 21, 1945, and the second on December 1, 1945. To his affidavit of September 21, 1945, are attached plaintiffs' exhibits 104, 105, 106 and 107 which (it is conceded) are true copies (photostat).

Affiant then states that: "The advertisement, plaintiffs' Exhibit 104, illustrates the same machine as the advertisements by The Thomas Company which had appeared in The Produce Packer for a number of months prior to the appearance of this exhibit, July 28, 1945. This advertisement, Exhibit 104, includes the statement 'Mfg. with license under Pat. No. 2,-302,525.' The advertisement, plaintiffs' Exhibit 105, is identical with Exhibit 104, except that in the above quoted statement the patent number is changed to No. 2,376,-120. The advertisements, Exhibits Nos. 106 and 107, are identical with each other but differ somewhat in arrangement and context from plaintiffs' Exhibit 105. Both of these advertisements, Exhibits 106 and 107, give the patent number 2,376,120.

"All of these advertisements, Plaintiffs' Exhibits 104, 105, 106, and 107, illustrate the same machine as can be seen from the fact that all use the same picture, and the same identification of the machine, 'No. 32—Special Off-The-Line Model.' In Exhibits 104 and 105 Thomas says of this machine: 'Faster. Cleaner. Less Barking' and 'Reduce your cost and improve your quality with a Peerless.' This same machine, No. 32, is identified in Exhibit 104 as being made under the Campbell patent No. 2,302,525, and in Exhibits 105, 106, and 107 as being made under the Campbell and Thomas patent No. 2,376,120."

In his affidavit of December 1, 1945, affiant (Mueller) says: "The fingers of the defendants' poultry picking machines, exemplified by plaintiffs' Exhibit J and defendants' Exhibit FF, not only arch or bend when they strike the poultry as admitted in the Campbell affidavit, page 3, and in the Thomas affidavit, page 5, (which action is illustrated in Fig. 1 of the Hunt patent in suit), but also flatten when they strike the poultry in precisely the same way as the Hunt preferred fingers illustrated in the patent in suit, the preferred type fingers of the Greenbrier machines which I manufacture and sell under the Hunt patent in suit, and the fingers of the defendants' machines which were found to infringe in this case and which are exemplified by plaintiffs' Exhibit 16."

In his affidavit Roy C. Potts (who testified as an expert at the original trial) says: "On August 27, 1945, I examined and studied the structure, mode of operations and results of a 'Pioneer' poultry picking machine at the Williams Poultry Company, 2400 Broad St., Chattanooga, Tenn. * * * The Campbell 'Pioneer' machine is substantially identical in structure and is identical in mode of operation and results with the accused Campbell machines involved in the trial of the original case which were exemplified by Plaintiffs' Exhibit 16, and with the Hunt patented machine. * * * The fingers of the 'Pioneer' machine exemplified by the accompanying finger, plaintiffs' Exhibit J are substantially the same as the fingers illustrated in plaintiffs' Exhibit 16, the Campbell patent No. 2,302,525, in having a base portion attached to the drum, a weakened and more flexible outer portion and a plurality of spaced corrugations on the outer surface of the finger. The fingers of the Campbell 'Pioneer' machine are rendered lighter and more flexible toward the tip by having the body portion of the finger taper to a smaller diameter towards the tip. The fingers illustrated in plaintiffs' Exhibit 16 are rendered lighter and more flexible toward the tip by having material removed

from the center in the form of a longitudinal bore so that there is less rubber in the body of the fingers at the outer end than at the base. In the same way the fingers of the Campbell 'Pioneer' machine, plaintiffs' Exhibit J, have rubber removed from the outer end portion leaving a thinner, more flexible body portion at the tip, the only difference being that the material is removed from the inside of the fingers of plaintiffs' Exhibit 16 and from the outside of the fingers, plaintiffs' Exhibit J, so that about the same quantity of material is left in the body portions of the fingers at their outer ends in both plaintiffs' Exhibit 16 and Exhibit J.

"The fingers, plaintiffs' Exhibit J, have the outer surfaces of the corrugations arranged in a cylinder while the body portion is tapered so that the fingers, plaintiffs' Exhibit J, are cylindrical and are reduced in weight and increased in flexibility toward the tip; the hollow of the fingers, plaintiffs' Exhibit J, caused by the removal of material being on the outside instead of in the inside of the finger as in plaintiffs' Exhibit 16. The operation and results of the said Campbell 'Pioneer' machine and of the fingers thereon exemplified by plaintiffs' Exhibit J, are identical with the operations and results of the defendants' accused machines, exemplified by plaintiffs' Exhibit 16 and of the Hunt patented machine. * * * The results of the said Campbell 'Pioneer' machine are identical with the results of the defendants' machine exemplified by plaintiffs' Exhibit 16 and with the results of the machine of the Hunt patent. * * *

"In examining and studying the operation of the said Campbell 'Pioneer' machine I actually operated the same myself to remove feathers from chickens that had been scalded in accordance with the regular procedure used at the Williams Poultry Company plant where the machine was located when I examined it. * * * From the foregoing observations and tests I know that the slight differences in structure between the fingers of the 'Pioneer' machine exemplified by plaintiffs' Exhibit J and the fingers of the defendants' machine exemplified by plaintiffs' Exhibit 16 in that the fingers of Exhibit J have the hollow on the outside instead of the inside, do not effect the functioning or the results of the two fingers or of the two machines. In my opinion the aforesaid Campbell 'Pioneer' machine and the fingers thereof exemplified by plaintiffs' Exhibit J are the full equivalents of the machine and fingers exemplified by plaintiffs' Exhibit 16, and both of these machines are in the same way the full equivalents of the Greenbrier machines exemplified by plaintiffs' Exhibit 19 and the machines disclosed in the Hunt patent in suit, plaintiffs' Exhibit 15."

Referring to these affidavits and exhibits and in support of their contentions herein plaintiffs' counsel (Br. P. 3 et seq.) assert: "After the Injunction was served on Campbell, as shown by the affidavit of Johnson, Campbell continued to sell the machines illustrated, discussed and described precisely in Exhibits H. K, 100, 101 and substantially in Exhibit 102, called the Campbell 'Pioneer' machine. Campbell asserted that these 'Pioneer' machines were patented in both the Hunt patent No. 2,300,157 in suit and the Campbell patent No. 2,302,525 disclosing the machine already held to infringe. This is asserted in Exhibits 101, H and K. It was asserted at the bottom of page 1 of Exhibit H in the following language: 'Patented for Your Protection. Pat. No. 2,302,525 and Pat. No. 2,300,157. Others Pending.' No doubt among the 'others pending' was included the application from which Exhibit 102 issued. (Exhibit 102 is a copy of Patent No. 2,376,120 issued May 15, 1945, to Harold C. Campbell and Heyward D. Thomas (defendants herein) on application July 1, 1943, Serial No. 493,000 for 'Fowl-Plucking Apparatus or the like'). In the particular circular constituting Exhibit H someone at some time drew a line through the number of the Hunt patent. Apparently this was done after the Court handed down its decision because the same number of the Hunt patent appeared in Exhibit 101 which was undoubtedly issued before the Court's decision. Certainly the advertisement was set up before that date. There can be no doubt that the number of the Hunt patent was inserted intentionally because it does not appear in Exhibit 100 which was issued before Exhibits 101, H and K in which it

does appear. Moreover, there can be no doubt that it was Campbell's practice to include the number of the Hunt patent in all his pronouncements since it appears in each Exhibits 101, H and K, and was on the machine examined by Mr. Potts. It is also plain that the purpose was to get the benefits and advantages resulting from the Hunt invention and the commercial activities of the plaintiffs.

"In Exhibit K, which is Campbell's advertisement in the June, 1945, issue of the 'American Egg and Poultry Review,' the numbers of both the Hunt and the Campbell patents are inserted under the picture of the Campbell 'Pioneer' machine shown in the upper left-hand part of Exhibit K.

"In his affidavit Mr. Potts says that he examined one of these Campbell 'Pioneer' machines and found the number of the Campbell patent on the machine followed by the digits '157' which was preceded by something which someone had attempted to erase. The digits '157' are the last three digits of the number of the Hunt patent in suit so that it is manifest that the part mutilated was the numbers 2,300, which were the first four digits of the number of the Hunt patent in suit. Thus again we have a case of an attempt to remove the number of the Hunt patent after the Court's decision came down. All of these removals are immaterial because the original inclusion of the number of the Hunt patent is an admission that the machine is covered by the Hunt patent. * * *

"In Exhibit K we find the following statement: 'We are past builders of the Ashley and Peerless Poultry Pickers, so the Pioneer should be true to its name.' Now the 'Ashley' machine is a machine made under the Hunt patent by a licensee. * * * Thus, upon Campbell's own representation, he is currently making an infringing machine in violation of the Court's Order and the Injunction. It would seem that these admissions were sufficient bases for granting the Motion, especially under the well established rule that a party may not proclaim such things to the public and then come into Court and contradict them (Cugley v. Bundy, 6 Cir., 93 F.2d 932, 934; Potts v. Creager, 155 U.S. 597, 610, 15 S.Ct. 194, 39 L.Ed. 275; Blanc v. Curtis, 6 Cir., 119 F.2d 395, 399; Sprout v. Bauer, D.C.S.C.Ohio, 26 F.Supp. 162. What Campbell claims by his markings he admits in his advertisements and other Patent. * * * Campbell himself makes the same claims for the 'Pioneer' machine in his advertisements, including Exhibits H, K, 100, and 101, and in his patent on the second device, Exhibit 102, that were made in the advertisements of the 'Peerless' (infringing) machine and which advertisements constituted Exhibit 14, including those from 14-A to 14-L, (in the main case). * * *

"Both Campbell and Thomas not only claim, but pronounce in their advertisements, that the machines here accused, including the Campbell 'Pioneer' machine and the Thomas 'Peerless' machine get the same results as are realized by the Hunt machine, and were not only realized, but were advertised by these same defendants to be realized by the 'Peerless' machine held to infringe in the main cause. All of these things are confirmed in the Campbell and Thomas patent, Exhibit 102, and elsewhere. * * * Since admittedly the finger of the Hunt patent, the finger of the 'Peerless' machine of the Campbell patent, and the fingers of the Campbell 'Pioneer' machine and of the Thomas current 'Peerless' machine all arch or bend, the operation is the same in kind. * * * Our contention of equivalency is not based entirely upon achievements of the same results, but also upon the proof that those results are performed in substantially the same way. These proofs include the admissions of the defendants; indeed, the contentions in defendants' brief that defendants' fingers arch in the manner they do establishes substantial identity of mode of operation in view of the same action in the Hunt machine as shown, for example, in Fig. 1 of the Hunt patent."

Upon a consideration of all of the evidence, together with the briefs and arguments of counsel, the decision of this Court in the original trial and the applicable law, the Court is of opinion and so finds that although showing some change in form and position, defendants herein, Harold C. Campbell and Heyward D. Thomas, have each used substantially the same device in

their respective so-called "modified structure" as in the infringing machine; that it performs precisely the same offices with no change in principle and that in each instance the device is, as a matter of fact, the equivalent of the adjudicated infringing machine in its relation to the patent in suit. The Court entertains no doubt with respect to the question here presented. American Engineering Co. v. E. H. Bardes Range & Foundry Co., D.C., 25 F.Supp. 623, affirmed E. H. Bardes Range & Foundry Co. v. American Engineering Co., 6 Cir., 109 F.2d 696.

The Court further finds and concludes that the defendants, Harold C. Campbell and Heyward D. Thomas, and each of them, by making and selling their respective so-called "modified structure" (defendant Campbell the "Pioneer" and defendant Thomas the current "Peerless"), have deliberately violated the order of injunction issued in the original case on August 11, 1945, and that they both and each have failed to show cause why they should not be held for contempt of court in so violating the order.

The Court finds and rules, therefore, that defendants, Harold C. Campbell and Heyward D. Thomas, and each of them, are guilty of (civil) contempt of this Court.

In their brief (P. 28), plaintiffs say: "On this proceeding we ask the Court to award the plaintiffs the profits made by defendants Campbell and Thomas on the machines sold by them since the Injunction, the damages sustained by plaintiffs, and tripling of the damages, together with counsel fees, expenses and interests and any other relief the Court may deem just, and that there be a reference to a master to take an account of profits and damages and to ascertain plaintiffs' costs and expenses in the contempt proceeding. An award of profits and damages and expenses is the minimum compensatory relief to afford plaintiffs full compensation as distinguished from any punitive relief, Leman v. Krentler-Arnold Co., 284 U.S. 448, 455 to 457, 52 S.Ct. 238, 76 L.Ed. 389."

The Court, in the instant proceeding, will and hereby does, make an award to plaintiffs and against defendants herein, Campbell and Thomas, of the profits made by defendants and each of them, on the machines sold by them respectively since the injunction and because of their violation of the order of injunction of this Court, and of damages (if any) suffered by plaintiffs because thereof, and expenses, said expenses to be limited to court costs in this contempt proceeding; the costs and expenses incident to the reference to a Special Master hereinafter referred to, including reasonable compensation to the Special Master for his services (the compensation to the Special Master to be secured in the first instance by plaintiffs also), and reasonable expenses incurred in the bringing of this proceeding, including a reasonable attorney fee in this contempt proceeding, to be paid plaintiffs' counsel of record.

And the Court refers this proceeding to James D. Herrman, Esq. (of Dayton, Ohio), as a Special Master, to take an accounting of the profits, and to ascertain the damages (if any) and costs and expenses aforesaid, and report the same to this Court.

Counsel may prepare and submit an order accordingly.