**MUELLER et al. v. PICKWICK CORP. et al.**

Clv. A. No. 105.

United States District Court
N. D. Iowa, Cedar Rapids Division.

Sept. 5, 1947.

F. O. Richey, H. F. McNenny, Cleveland, Ohio, Amor H. Sargent, Cedar Rapids, Iowa, for plaintiffs.

Alexander C. Mabee, Samuel W. Kipnis, Chicago, Ill., Don Barnes, Cedar Rapids, Iowa, for defendants.

GRAVEN, District Judge.

Pursuant to assignment, the above entitled cause came on for trial at the Federal Court House at Cedar Rapids, Iowa, on March 5, 1946. The parties presented their evidence on March 5, 6, 7, 8, 11, 12, 13, 14, 15, 18, 19, 20, 21, 22, 1946. On March 22, 1946, the parties completed the presentation of their evidence. The parties desired to submit written briefs and arguments after a transcript of the evidence had been made. By Court order, the parties were to file their written briefs and arguments within specified times after the transcript of the evidence had been made and filed. Prior to the filing of the transcript of the evidence, the plaintiffs on June 18, 1946, filed herein an application to reopen the case for the taking of additional evidence. On July 5, 1946, the defendants filed herein an application to reopen the case for the taking of additional evidence. The said applications were granted, and on January 7, 1947, at the Federal Court House at Cedar Rapids, Iowa, the taking of additional evidence was commenced. On January 8, 1947, the parties completed the presentation of their additional evidence. By Court order it was provided that written briefs and arguments should be filed after a transcript of all the evidence had been filed. Subsequently a transcript of all of the evidence was filed, and thereafter written briefs and arguments of the parties were filed. On July 30, 1947, the last of the written briefs and arguments was filed and the case was then submitted to the Court and by it taken under advisement.

Now, to-wit, on this 5th day of September, 1947, the Court now being fully advised in the premises makes the following Findings of Fact, Conclusions of Law and Order for Interlocutory Judgment.

### Findings of Fact

This is a suit under the Patent Laws of the United States charging the defendants

with infringement of United States Patent No. 2,300,157, issued to George R. Hunt on October 27, 1942, pursuant to an application filed November 16, 1939. The patent is for a "Feather-picking apparatus for fowls and the like."

2. Plaintiff, George R. Hunt, is the owner of the legal title of the patent in suit, and plaintiff, Conrad B. Mueller is the owner of the equitable title thereof by virtue of an exclusive license agreement dated February 14, 1940.

3. Defendant, Pickwick Corporation, a corporation of the State of Iowa, having its principal office at 221 3rd Street, N.E., Cedar Rapids, Iowa, has, since October 27, 1942, been manufacturing and selling the accused poultry picking machines and fingers therefor illustrated in plaintiffs' Exhibits 4a, 5a, and 8 and exemplified by plaintiffs' Exhibit 8a. Defendant Jerry Srp is a citizen of the United States, has an address at 221 3rd Street, N.E., Cedar Rapids, Iowa, and since October 27, 1942, has been President of Defendant Pickwick Corporation and has controlled, directed and participated in the infringements committed by the Defendant Pickwick Corporation, and, since October 27, 1942, has used the accused machines and fingers illustrated in plaintiffs' Exhibits 4a, 5a, 7 and 8 and exemplified by plaintiffs' Exhibits 7a and 8a. Defendant Flournoy E. Corey is a citizen of the United States and has an address at 221 3rd Street, N.E., Cedar Rapids, Iowa, and is General Manager and Secretary of the Defendant Pickwick Corporation and since October 27, 1942, has controlled, directed and participated in the infringements committed by the Defendant Pickwick Corporation.

4. The patent in suit contains 19 claims. Of these only Claims 2, 3, 7, 10, 12, 14, 17 and 19 are here in issue. These claims are divided as follows: Claims 2, 3, 7, 10 and 17 are machine claims and Claims 12, 14 and 19 are finger claims. During the trial of the case, the plaintiffs claimed infringement of method claim 16, but after the decision by the Sixth Circuit Court of Appeals in the case of Campbell v. Mueller, 159 F.2d 803, on February 3, 1947, and before this case was submitted to the Court, the plaintiffs disclaimed such method claim.

5. Each of the claims here in suit was held valid by the District Court for the Southern District of Ohio in the case of the plaintiffs herein v. Harold C. Campbell, H. D. Thomas, and William E. Ginovan, in a decision, plaintiffs' Exhibit 34, reported at 68 F.Supp. 464, which decision was affirmed by the Court of Appeals for the Sixth Circuit in a decision reported at 159 F.2d 803. Each of claims 2, 7, 10, 12, 17 and 19 was held to be infringed by the Campbell and Thomas Machine illustrated by plaintiffs' Exhibit 36 herein.

6. In a decision finding Campbell and Thomas guilty of civil contempt, plaintiffs' Exhibit 98, reported at 68 F.Supp. 475, the District Court for the Southern District of Ohio held each of claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent here in suit to be infringed by the "modified" machines sold by Campbell and Thomas embodying solid fingers and illustrated in plaintiffs' Exhibit 102 herein. The patent in suit is also involved in a suit of the plaintiffs herein against Robert F. Wolfinger d. b. a. Superior Manufacturing Company, 68 F.Supp. 485, in which case the District Court for the Southern District of Ohio found that the plaintiffs were entitled to a bond or a preliminary injunction against the manufacture by defendants of machines illustrated in plaintiffs' Exhibit 109 herein.

7. The device shown and described in the Hunt patent in suit consists of an apparatus used in the poultry business for picking feathers from fowl in the course of preparing poultry for the market. The machine comprises a structure consisting of a drum mounted in a frame, and revolved by an electric motor, having flexible fingers arranged completely around the drum, and extending outwardly from the periphery thereof. In operating the device, a chicken (or other fowl) which has previously been scaled is pressed against the revolving drum, and the fingers remove the feathers by a rubbing or scrubbing action. The operator manipulates the chicken by turning it and twisting it so that all parts of the body contact the fingers of the revolving drum.

8. The problem which existed in the art prior to the invention covered by the Hunt patent in suit was in general to pluck poultry (fowl) mechanically and specifically to remove feathers from poultry rapidly and effectively without injury to the poultry and in such a manner that quantity production could be obtained. This problem in particular had existed and had been recognized in the art at least since 1916 within the knowledge of witnesses testifying in this case and to general knowledge always. At least since 1916 throughout the poultry industry there had been a need and a demand for a machine for plucking poultry, which would increase production and decrease the labor required, without injuring the poultry. There had always been a demand and a need for a machine which would pluck poultry.

9. From time immemorial poultry has been plucked by hand. Hand plucking had many disadvantages which had long been recognized in the art. Hand plucking was slow and laborious, very unsanitary, expensive, and involved considerable loss from scuffing, barking, or breaking the skin of the poultry.

10. Leading manufacturers of poultry equipment, since at least 1916, had been trying to develop a machine for plucking poultry, which would successfully remove the feathers without injuring the poultry. They had also searched for any such machine that might have been produced by others. Both these trials and these searches were unsuccessful until the appearance of the machine of the Hunt patent in suit. In the course of these efforts the devices shown in the patents to Swanson, No. 1,889,228, Richards, No. 1,755,665, and Bouda, No. 1,372,595, were tried out. They failed to accomplish the desired result. Many ideas were suggested, most of which were found to be impractical and useless.

11. A number of years prior to the filing of the application by the Hunt patent suit, E. G. Berg of Fairbault and New Ulm, Minnesota, the patentee of Berg Patent 1,217,393, had conducted experiments with machines intended to pick poultry by means of revolving bristles. Those experiments were unsuccessful and were discontinued and the machines were subsequently abandoned and junked. The machines with which E. G. Berg conducted his unsuccessful and abandoned experiments did not use rubber fingers similar or like the finger described in the Hunt patent in suit. E. G. Berg did not contemplate or envision the use of such type of rubber fingers in connection with his machines.

12. Plaintiff, George R. Hunt, began experiments in the basement of his home in 1931 in an effort to produce a poultry plucking machine. All of his efforts failed until in 1937 he produced a machine which he tried out experimentally at the home of a friend, Edwin Ilg. While this machine successfully removed feathers without injuring the poultry it was too slow to be of commercial use nor would it remove all of the feathers from a chicken. Hunt continued his experiments and finally in 1939 he produced a machine substantially as shown in the drawings of the patent in suit.

13. Hunt solved the problem of rapidly and effectively removing the feathers from poultry by machine, so that quantity production could be obtained, but without injury to the poultry.

14. The device of the Hunt patent in suit is effective to pick poultry efficiently and rapidly without injury to the poultry with any of the three different kinds of scalds used commercially. With the "slack" scald which is used commercially in picking chickens (poultry) for immediate sale and consumption, the device of the patent in suit removes substantially all of the feathers in not more than about ten seconds per chicken. Using the "semiscald," which is used commercially in the picking of chickens which are to be placed in cold storage, the machine removes about 85% to 95% of the feathers without injuring the epidermis or delicate outer layer of the skin.

15. All of the prior patented art relied upon by the defendants in this case is paper art which never got beyond the paper stage or obtained any substantial commercial use.

16. The testimony presented by the defendants in regard to the use and existence of "Pleus" machine or machines prior to

the filing date of the application for Hunt patent in suit is unconvincing, unsatisfactory and lacking in credibility. The said "Pleus" machine or machines were not in public use or known or used prior to the filing date of the application for the Hunt patent in suit.

17. There is no anticipation of any of claims 2, 3, 7, 10, 12, 14, 17 or 19 of the Hunt patent in suit.

18. The machine of the Hunt patent in suit met with immediate success. Plaintiff, C. B. Mueller, learned of the Hunt machine and thereafter obtained an exclusive license on the Hunt invention and in September, 1939, started to manufacture machines on a commercial scale. The Barker Poultry Equipment Company of Ottumwa, Iowa, hearing of the machine, sent a representative to Akron, Ohio, to investigate. After further tests, including renewed unsuccessful efforts with the devices of Swanson patent No. 1,889,228 and Richards patent No. 1,755,665, the Barker Poultry Equipment Company obtained a sub-license from plaintiffs.

19. Plaintiff, C. B. Mueller, the Barker Poultry Equipment Company, and the Ashley Machine Company of Piqua, Ohio, have been manufacturing and selling machines licensed under the Hunt patent in suit. These machines have been sold in constantly increasing quantities except for a short period when production was restricted by scarcity of materials and labor caused by the war.

20. The commercial success of the device of the Hunt patent in suit has not resulted from advertising but rather from actual demonstrations of machines embodying the invention and the merit and achievement of the machines in use.

21. The machine defined by each of claims 2, 3, 7, 10 and 17, and the finger defined by each of claims 12, 14 and 19 of the Hunt patent in suit is new and useful, accomplishes important new results and embodies patentable invention.

22. None of the Hunt claims in suit are indefinite or ambiguous.

23. Each of claims 2, 3, 7, 10, 12, 14, 17 and 19 of the Hunt patent is valid.

24. The machines manufactured and sold by defendant Pickwick Corporation under the control and direction of defendants Flournoy E. Corey and Jerry Srp, which machines are illustrated in plaintiffs' Exhibits 4a and 5a, operate in the same way and obtain the same results as the machine disclosed in the Hunt patent in suit and are substantially identical therewith in structure. The fingers of defendants' machines, exemplified by plaintiffs' Exhibit 8a, are substantially identical in structure and identical in operations and results with the fingers disclosed in the Hunt patent in suit. The slight differences in shape and in the manner in which increased flexibility and decreased weight are obtained at the outer ends of the fingers between the defendants' fingers, plaintiffs' Exhibit 8a, and the fingers disclosed in the Hunt patent in suit, do not effect the functions of the two fingers. The removal of the rubber from the outside instead of from the inside of the finger is a mere reversal of parts and does not change the operations and results.

25. The Hunt patent in suit is not limited to hollow fingers. Claims 3, 4, 17 and 19 in suit do not recite the hollow feature which is recited in some of the other claims. The defendants' machines and fingers illustrated in plaintiffs' Exhibits 4a, 5a, and 8 respond literally to claims 3, 14, 17 and 19 and differ in structure from claims 2, 7, 10 and 12 only immaterially in matters of form and position which do not effect the offices performed or the principle of operation, and are the equivalents of the machine and finger disclosed in the patent in suit.

26. There is no file wrapper estoppel which prevents the claims in suit from being infringed by the defendants' machines and fingers. Plaintiffs are not estopped by the file wrapper of the Hunt patent in suit from covering machines and fingers which are equivalents of the finger and machine disclosed and claimed in the patent, including the defendants' machines and fingers illustrated in plaintiffs' Exhibits 4a, 5a, and 8.

27. The defendants' machines and fingers are not identical or substantially iden-

tical in mode of operation and results with anything in the prior art and are not the equivalents of anything in the prior art.

28. Claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent in suit are for patentable combinations as distinguished from non-patentable aggregations.

29. The plaintiffs have not used and are not using the patent in suit in an improper or illegal manner.

30. The plaintiffs have not conspired or combined with any other persons, firms or corporations to control and restrain inter-state trade and commerce in poultry-picking machines in violation of the Sherman and the Clayton Anti-Trust Acts, 15 U.S.C.A. §§ 1–7, 15 note, 12 et seq.

31. Plaintiffs have not unreasonably delayed in disclaiming claim 16 of the patent in suit and are entitled to the benefit and protection of the disclaimer statute.

Conclusions of Law

1. That this Court has jurisdiction of the parties to this action and the subject matter of this action.

2. That the Hunt patent in suit No. 2,300,157 is not anticipated, discloses patentable invention and each of claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent is valid.

3. That the defendants Pickwick Corporation, Jerry Srp, and Flournoy E. Corey have each infringed each of claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent in suit by making, using and selling and causing to be made, sold and used poultry-picking machines and fingers illustrated in plaintiffs' Exhibits 4a, 5a, and 8 and exemplified by plaintiffs' Exhibit 8a. That the defendant Jerry Srp has additionally infringed each of said claims by using poultry-picking machines embodying fingers illustrated by plaintiffs' Exhibit 7, and exemplified by plaintiffs' Exhibit 7a.

4. That the license agreements under the Hunt patent in suit, plaintiffs' Exhibits 63, 64, 65, 66 and 67 are not in restraint of trade or in violation of the anti-trust laws; and do not constitute or involve any abuse of the patent right, or any attempt to control re-sale prices or to interfere with the exercise of any rights of the purchasers of the patent machines; and are not contrary to the public interest.

5. That the plaintiffs do not come into this court with unclean hands.

6. That the plaintiffs have not made any improper or illegal use of the patent or violated the Sherman or Clayton Anti-Trust Acts in connection with the said patent or the machines manufactured thereunder.

7. That the plaintiffs are entitled to the relief prayed for in their complaint and to costs.

Order for Interlocutory Judgment

It is hereby ordered, that an interlocutory judgment shall be entered adjudging;

1. That the Hunt patent in suit No. 2,300,157 is not anticipated, that it discloses patentable invention and that each of claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent is valid.

2. That the defendants Pickwick Corporation, Jerry Srp, and Flournoy E. Corey have each infringed each of claims 2, 3, 7, 10, 12, 14, 17 and 19 of the patent in suit by making, using and selling and causing to be made, sold and used poultry-picking machines and fingers illustrated in plaintiffs' Exhibits 4a, 5a, and 8 and exemplified by plaintiffs' Exhibit 8a. That the defendant Jerry Srp has additionally infringed each of said claims by using poultry-picking machines embodying fingers illustrated by plaintiffs' Exhibit 7, and exemplified by plaintiffs' Exhibit 7a.

3. That the license agreements under the Hunt patent in suit, plaintiffs' Exhibits 63, 64, 65, 66 and 67 are not in restraint of trade or in violation of the anti-trust laws; and do not constitute or involve any abuse of the patent right, or any attempt to control re-sale prices or to interfere with the exercise of any rights of the purchasers of the patent machines; and are not contrary to the public interest.

4. That the plaintiffs do not come into this court with unclean hands.

5. That the plaintiffs have not made any improper or illegal use of the patent or violated the Sherman or Clayton Anti-Trust

Acts in connection with the said patent or the machines manufactured thereunder.

6. That the plaintiffs recover of the defendants the profits, gains, earnings and advantages which the said defendants have received or made or which have arisen or accrued to it from the infringements aforesaid, together with the damages which the plaintiffs have sustained by reason thereof.

7. That the defendants and those acting by them or under them be enjoined and restrained from further infringements.

8. That the plaintiffs recover of the defendants the costs of this action.