**HUNT et al. v. ARMOUR & CO.**
No. 10181.

United States Court of Appeals,
Seventh Circuit.

Dec. 15, 1950.

Petition for Rehearing Dismissed
Jan. 16, 1951.

Horace Dawson, Casper William Ooms and George E. Frost, Frederick R. Baird, Carl C. Batz, all of Chicago, Ill., for appellant.

Will Freeman, Norman Lettvin, Chicago, Ill., F. O. Richey, H. F. McNenny and F. B. Schramm, all of Cleveland, Ohio, George N. Hibben, Chicago, Ill., (Davis, Lindsey, Hibben & Noyes, Chicago, Ill., Richey & Watts, Cleveland, Ohio, of counsel), for appellees.

Before DUFFY, FINNEGAN and LINDLEY, Circuit Judges.

DUFFY, Circuit Judge.

U. S. Patent No. 2,300,157 for Feather-Picking Apparatus for Fowls And The Like was issued to George R. Hunt on October 27, 1942. This appeal is from a judgment holding Claims 2, 3, 7, 10, 12, 14, 17 and 19 of said patent valid and infringed by various chicken-picking machines constructed by E. J. Albright Company and Gordon Johnson Company and owned and used by defendant.

Defendant urges the defenses of non-infringement, invalidity and patent misuse and argues that the doctrine of equivalents which it claims was relied on by the trial court may not be resorted to because of an alleged file wrapper estoppel.

The patent in suit relates to improvements in picking feathers from fowl, and particularly to the provision of novel fingers for use in removing feathers. The problem confronting Hunt was to find some means or evolve or invent some device which would avoid the slow, tedious and expensive process of handpicking of fowl. There are 8000 feathers on a chicken, ranging from the large flight feathers on the wing and tail to the small cover feathers, down feathers and pin feathers. In plucking a chicken it is very desirable to remove all the feathers without breaking the skin, because germs then may enter which will spoil the flesh of the chicken. In the commercial processing of chickens care must

also be taken to avoid bruising and discoloring the flesh.

For many years before Hunt there had been a strong and insistent demand for some device to remove feathers from fowl mechanically. Many skilled in the art had searched for a solution of the problem and many efforts were made to construct chicken picking devices, but none of them was successful.

Hunt was a mechanic living in Akron, Ohio. In 1931 he started working in the basement of his home on the problem of developing a workable, efficient chicken picking device. His efforts failed until in 1937 he produced a machine that removed most of the feathers of a chicken, but was too slow in operation to be of commercial value. Hunt continued his research and in 1939 produced a machine substantially as shown by the drawings of the patent in suit. Hunt produced several machines by hand and sold them.

Hunt filed his patent application on November 16, 1939. After three interferences in which the awards were to Hunt, and after claims had been rejected, amended and rewritten, and after a demonstration of the Hunt machine before the principal examiner of the Patent Office and his assistant, the patent in suit was issued on October 27, 1942.

Conrad B. Mueller obtained an exclusive license on the Hunt invention and started to manufacture machines on a commercial scale. The machines met with immediate and widespread acceptance. The impact upon the industry is impressive. Within four years after the Hunt machines were first put on the market, about 85% of the commercially dressed poultry was picked on machines while the percentage at the present time is about 90%. Mueller assigned his exclusive license to the plaintiff, Greenbrier Company.

The device shown by the patent in suit is a hollow drum mounted in a frame, and driven by an electric motor. From the periphery of the drum extend a plurality of flexible fingers projected at an angle of inclination of about 14°. The fingers are arranged in spaced rows completely around the drum, each row being staggered with respect to the adjacent rows. Each finger has closely spaced screw-thread corrugations extending part way down the finger from the outer end. In the preferred form the fingers have a tapered bore extending from the outer or free end almost as far as the corrugations extend. The specifications also stated that solid fingers would remove feathers but that the operation was speeded by the use of hollow fingers.

Before a chicken is plucked it is immersed in hot water and the higher the temperature of the water, the more easily the feathers are removed. When chickens are prepared commercially for immediate sale, a water temperature of 128° is used. However, when the chickens are to be placed in cold storage, water of a lower temperature (semi-scald) is used. The operator presses the chicken against the fingers projecting from the revolving drum. By turning the chicken to different positions all parts of its body will be contacted by the fingers of the machine and the feathers will be removed by a rubbing or scrubbing action. Even when only the semi-scald has been used the Hunt manual machine will quickly remove up to 95% of the feathers without injuring the delicate outer layer of the chicken's skin. When the higher temperature water is used, the Hunt manual machine removes practically all of the feathers within a period of 8 to 10 seconds.

The patent in suit, although of comparatively recent date, has been the subject of considerable litigation. In Mueller et al. v. Campbell et al., D.C.S.D.Ohio, 68 F.Supp. 464, decided June, 1945, the action was against one Campbell who had been involved in one of the interference proceedings in the Patent Office. Judge Nevin held that the machine Claims 2, 3, 7, 10 and 17 and the finger Claims 12, 14 and 19 were valid and infringed, but held that Claim 16, the method claim, was invalid. On appeal the Court of Appeals for the Sixth Circuit in Campbell et al. v. Mueller et al., 159 F.2d 803, affirmed the judgment on validity of the claims there in issue, and also as to their infringement, with the exception that the fingers of Campbell's machine were held not to infringe Claims 3 and 14. The court

limited Claims 3 and 14 to a machine equipped with fingers or a finger which varied in thickness. There was no ruling on whether a solid finger infringed, as that question was not before the court for decision. After the appellate court's decision the plaintiffs disclaimed Claim 16.

In 1946 Judge Nevin held the defendants in contempt for continuing their infringement of the Hunt patent by manufacturing and using a machine with a solid tapered finger. Mueller et al. v. Campbell et al., D.C.S.D.Ohio, 68 F.Supp. 475. In that case the defendants emphasized the defense of file wrapper estoppel, but it was overruled. Judge Nevin held that Claims 3, 14, 17 and 19 do not recite the hollow feature of the finger, and that Claims 2, 7, 10 and 12 were infringed, by applying the doctrine of equivalents.

In Mueller et al. v. Pickwick Corp. et al., D.C.N.D.Iowa, 94 F.Supp. 742, Judge Graven held that the claims of the Hunt patent here in issue were valid and infringed, and that there was no file wrapper estoppel.

In Mueller et al. v. Wolfinger et al., D.C. S.D.Ohio, 91 F.Supp. 971, Judge Nevin again held that the claims of the Hunt patent here in issue were valid and infringed by the defendants by the use of both the hollow and the solid tapered fingers.

In Hunt et al. v. Priebe & Sons, Inc., D.C. N.D.Iowa, 92 F.Supp. 767, defendants were charged with infringement by their use of machines built by E. J. Albright Company and Gordon Johnson Company. The claims of the Hunt patent here in issue were again held valid and infringed, and the court held that the Hunt patent was a pioneer patent and basic in nature.

In the case at bar the district judge said in his opinion, 90 F.Supp. 767, 769: " * * It is my holding, and the record shows conclusively, that until the Hunt patent and the disclosures made by Hunt there was never any machine built that successfully picked chickens mechanically. * * *"

He also referred to prior patents, including Bouda No. 1,372,595 and Richards No. 1,755,655, as paper patents and said, 90 F.Supp. at page 770: " * * * Each and everyone of them, including Bouda, was merely an inventor's dream. None of them was ever built and none of them ever picked a chicken. * * *"

Rejecting the prior art and denying the claim of file wrapper estoppel, Judge Shaw found the claims here in issue to be valid. As a conclusion of law he held as to infringement: "Defendant, Armour and Company, has infringed claims 2, 7, 10, 12, 17 and 19 by using the Albright automatic machines illustrated in Plaintiffs' Exhibits 1, 2 and 3 and the fingers thereof exemplified by Defendant's Exhibit 8; has infringed claims 2, 3, 7, 10 and 17 by using the Albright automatic machines illustrated in Plaintiffs' Exhibits 1, 2 and 3 equipped with licensed Barker fingers exemplified by Defendant's Exhibit 2; has infringed claims 2, 3, 10, 12, 14, 17 and 19 by using the Johnson automatic machines illustrated in Plaintiffs' Exhibit 11 and the fingers thereof exemplified by Defendant's Exhibit 5; has infringed claims 3, 10, 14, 17 and 19 by using the Johnson old manual machines illustrated in Plaintiffs' Exhibit 13 and the fingers thereof exemplified by Defendant's Exhibit 7; has infringed claims 10, 17 and 19 by using the Johnson new manual machines illustrated in Plaintiffs' Exhibit 10 and the fingers thereof exemplified by Defendant's Exhibits 6 and 45."

Claims 2 and 3 are typical of the machine claims, and Claim 12 is typical of the finger claims [1]:

"Claim 2. A feather plucking device comprising a rotatable member having secured thereto means projecting from the outer surface thereof, said means being substantially cylindrical in shape, of elastic material, and having projections on the surface thereof, a portion of said means adjacent one end thereof being hollow.

"Claim 3. A feather plucking device comprising a rotatable member having secured thereto means projecting from the outer surface thereof, said means being

1. All the claims here in issue are set forth in detail in the opinion of the district court, 90 F.Supp. 767, 770.

substantially cylindrical in shape, of elastic material, and having projections on the surface thereof, a portion of said means having a thin wall and the remainder thereof having thicker wall portions.

"Claim 12. A poultry plucking finger member of the character described comprising a substantially cylindrical body formed of elastic material and having projections on the outer surface thereof, a portion of said body throughout its length being hollow, the walls of the body being sufficiently thick to avoid collapse in a direction parallel to the longitudinal axis when the finger is in use."

On this appeal defendant argues that the prior art is represented principally by two patents, Bouda No. 1,372,595 and Richards No. 1,755,655. These show solid fingers on opposed rotatable shafts. Defendant concedes that structures of these two patents never went into commercial use. However, defendant did construct and introduce into evidence what it claims are physical embodiments of these patents. These machines and their operation at an inter-parties test are shown in photographs and in colored moving pictures, introduced and shown before the district court and also displayed before this court upon the oral argument.

The prior art patents here relied on, including Bouda and Richards patents, were before the Patent Office, the Court of Appeals for the Sixth Circuit, Judge Nevin in four proceedings, Judge Graven in two proceedings, and Judge Shaw, from whose decision this appeal arises. Not once has the defendant's contention as to Bouda and Richards been upheld.

■ The presumption of validity of a patent is greatly strengthened when the principal art relied upon has been considered and rejected by the Patent Office. Lewyt Corp. v. Health-Mor, Inc. et al., 7 Cir., 181 F.2d 855, 857. Although none of the court decisions cited above is binding upon us, the unanimity of their holdings is at least persuasive.

■ In our opinion the district court was correct in rejecting the Bouda and Richards patents as prior art in passing on the validity of the claims in question. From 1925 to 1931 Bouda, patentee in No. 1,372,-595, was employed by the Collis Company, at that time the largest manufacturer of poultry equipment. His specific job was to develop a chicken picking machine, and he devoted his efforts to that end. In spite of the widespread demand for such a machine, Bouda's ideas did not get much further than his drawing board. A few abandoned parts similar to some of the drawings of the Bouda patent were scattered around an old storeroom. The Collis Company was unable to produce an operative chicken picking machine under the Bouda patent.

The Bouda patent shows rubber covered rollers, intended to be driven around the cylindrical space enclosed by the fluted rollers. A screen surrounding the fluted rollers formed the inside wall of a channel and chickens were to be carried through this channel by a conveyor chain. The feathers of the chicken were supposed to project through the screen and be caught between the fluted rollers and the revolving and rotating rollers "which gives the feathers a quick jerk." Bouda claimed this part of his device would pluck feathers and he provided for a turning or rotation of the chicken as it passed between rotating rollers. In another part of his device Bouda provided for a series of rotating rubber paddles which were for the purpose of wiping off any loose material clinging to the skin of the chicken. In this section he made no provision for turning or rotating the bird. He was referring to this section of his device when he stated in his patent (p. 3, lines 101–104): "* * * and auxiliary brushing elements for removing the feathers from the poultry *after* they have been picked by the rollers." (Emphasis added)

In the so-called physical embodiment of the Bouda patent constructed by defendant for use at the trial, the screen and rollers intended by Bouda as the feather plucking mechanism were eliminated entirely, but by speeding up the rotation of the paddles or scrapers, feathers were actually plucked from fowls in tests that were made—not with too great success, to be sure, for of

the three chickens used in demonstrating this machine, the head of one was pulled off, and the second chicken was considerably mauled.

The Richards patent included a pair of shafts, positioned one above the other, carrying fingers and geared together so as to rotate in opposite directions at the same speed with the fingers intermeshing and overlapping for about half their length. Fowl were supposed to be towed between the rows of fingers, in the same direction that the intermeshing fingers were turning, by means of conveyor chains. The gearing disclosed in the patent drawings is arranged to rotate the brushes synchronized with the movement of the chickens, so that the brush rolls turn less than one-half revolution during the time a bird on the conveyor moves from one side of the housing to the other. This is the only relative speed possible with the structure as disclosed in the patent, and it is apparent that being pulled only once through a set of intermeshing fingers, very few feathers would be removed. Richards, the patentee in No. 1,755,655, while working for the Barker Poultry Equipment Company, another large manufacturer, attempted to sell his idea of a poultry picking machine as represented by the drawings of his patent. The idea was passed on to the Collis Company but was rejected as "fantastic" and "as being no better than the Bouda machine."

The district Court, after viewing the machines and hearing the witnesses, found that this partial Bouda model differed from the disclosure of the Bouda patent in structure, mode of operation and results, and had no probative value (Finding 16), and that Exhibit 36 was not built in accordance with the Richards specifications and that it differed from the disclosure of the Richards patent in structure, mode of operation and results, and had no probative value (Finding 18). We think that such findings clearly are not erroneous, and must be approved.

■■ In spite of the court decisions adverse to its contentions, Mueller et al. v. Campbell et al., D.C., 68 F.Supp. 475; Mueller et al. v. Pickwick Corp. et al., D.C., 94 F.Supp. 742; and Hunt et al. v. Priebe & Sons, Inc., D.C., 92 F.Supp. 767, defendant here earnestly argues for file wrapper estoppel. Defendant says that in the Patent office Hunt sought and was refused claims broad enough to cover both solid and hollow fingers, that he acquiesced in the refusal and accepted a patent limited to hollow fingers. Defendant also insists that the doctrine of equivalents may not be resorted to because of the "broader and dominating rule of file wrapper estoppel." Of course accepting a narrower claim when the Patent Office makes it a condition of the grant may result in estoppel. Cadillac Motor Car Co. et al. v. Austin, 6 Cir., 225 F. 983. However, our examination of the proceedings as shown in the file wrapper convinces us that Hunt did not surrender his claims which were broad enough to cover a solid finger, and that the Patent Office did not make any such limitation a condition of the grant.

Hunt filed his application in the Patent Office disclosing the preferred form of machine equipped with hollow fingers having a tapering bore. However, the specification disclosed that a solid finger could also be used, instead of the hollow form.[2] The examiner at first rejected many of Hunt's claims on the prior art. Thereupon Hunt and his solicitor had an interview with the principal examiner and his assistant, and demonstrated the Hunt machine. Following this demonstration all of the claims, including both the allowed and rejected claims,

2. "* * * it has been found that a solid finger of the kind described will remove feathers satisfactorily, but the operation is further speeded up if a tapered bore (40) is formed in each finger, with the taper decreasing inwardly as shown in Fig. 3." Page 2, Patent No. 2,300,157. "While I have shown the preferred type of finger for use with my apparatus, it will be understood that other types of fingers may also be used satisfactorily as long as they have a plurality of relatively closely spaced corrugations or projections thereon which can be successively brought into engagement with the feathers of a fowl." Page 2, Patent No. 2,300,157.

were cancelled "without prejudice."[3] The rewritten claims included both broad and narrow claims, and included Claim 31, which was broader than any claim theretofore presented. The examiner acquiesced in the cancellation of the claims "without prejudice," and the rewritten claims including the broad claims were allowed and made counts of the three interferences which the examiner thereupon set up.

Hunt later inserted Claim 32 which became Claim 16 of the patent. This claim was also broader than any claim originally presented; in fact it was so broad it was held invalid by the Court of Appeals for the Sixth Circuit. Campbell et al. v. Mueller et al., 159 F.2d 803. When the interferences were decided in Hunt's favor, three new claims were added which became Claims 17, 18 and 19. These claims were added to "cover the idea of having an opening or cut-out portion at the outer end of the fingers." As allowed, patent Claims 17 and 19, with the express agreement of the examiner, covered both solid and hollow fingers, with either the end surface or a side surface of the outer end portion recessed to provide spaced edges or spaced surfaces.

In our opinion the district court was correct in overruling the defense of file wrapper estoppel.

On the question of infringement defendant's principal contention that Hunt's patent did not cover any form of solid fingers has heretofore been sufficiently discussed. Defendant contends generally for a narrow construction of the Hunt claims, and also argues that the accused devices do not infringe under the rule that infringement is avoided by the omission of any structural features specified in a patent claim. It would unduly extend this opinion, already too long, to discuss each of the accused fingers and machines.

█ It is well established that the test of infringement is whether the accused device does the same work in substantially the same way and accomplishes the same result. Nordberg Mfg. Co. v. Woolery

Machine Co., 7 Cir., 79 F.2d 685, 692; Sanitary Refrigerator Co. v. Winters et al., 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed. 147. As recently stated by the Supreme Court, " * * * 'if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form or shape.' * * *" Graver Tank & Mfg. Co., Inc., et al. v. Linde Air Products Co., 339 U.S. 605, 608, 70 S.Ct. 854, 856.

█ An infringement is not avoided by a mere reversal or transposition of parts or a mere change in form without change in function. Chicago Lock Co. v. Tratsch et al., 7 Cir., 72 F.2d 482, 485. It is of course fundamental that the claims of a patent be interpreted in the light of the specification. Schriber-Schroth Co. v. Cleveland Trust Co. et al., 311 U.S. 211, 217, 61 S.Ct. 235, 85 L.Ed. 132. Devices are to be classified by performance rather than by words. We think the claims of a meritorious patent, such as Hunt's, should have a liberal interpretation.

Claims 3 and 14 provide for "a thin wall and the remainder thereof having thicker wall portions." Possibly this could be interpreted to refer to a hollow bore construction. Nevertheless we think that the finding of the district court to the contrary is not clearly erroneous, and therefore it cannot be disturbed.

In spite of the variation in length and shape, the accused fingers perform the same functions in the same way and accomplish the same result as the fingers in the Hunt patent. This court recently said in Hazeltine Research, Inc., v. Admiral Corp., 183 F.2d 953, 955: "Thus, there is no room longer to doubt that the issues most prevalent in patent litigation, and particularly those of validity or invalidity, infringement or non-infringement, are issues of fact and that a finding by the trial court on such issues is within the terms of Rule 52(a) [Fed.Rules Civ.Proc. 28 U.S.C.A.] which a court of review is not at liberty to set aside unless 'clearly erroneous.' * * *"

3. This proceeding, although somewhat unusual, was expressly stated to be for the purpose of saving time.

■ The findings of the district court as to validity and infringement herein, not being clearly erroneous, and to our mind being, moreover, clearly correct, must be sustained.

The remaining defense is that of misuse. Plaintiffs say that they have been "harassed and bedeviled" with misuse defenses ever since they started their first suit, but point out that this defense has not been sustained by any court which has passed upon it. The specific misuse defense relied upon by defendant in the case at bar was overruled by Judge Nevin, Mueller v. Wolfinger, D. C., 91 F.Supp. 971, and Judge Graven, Hunt v. Priebe & Sons, Inc., D.C., 92 F.Supp. 767.

Plaintiffs and their licensees sell machines covered by the machine claims, and they also sell separately fingers covered by the finger claims, the latter for use as replacements for worn out fingers in licensed machines. After the commencement of this suit defendant purchased fingers licensed under the Hunt patent from Barker Poultry Equipment Company, and installed them in the accused Albright machine.

Defendant argues that the sale of a patented article exhausts the monopoly in that article, and the patentee may not thereafter by virtue of his patent control the use or disposition of the article. Defendant insists that the district court was in error in holding that it infringed the Hunt patent by owning and operating Albright automatic machines equipped with licensed Barker fingers. Defendant argues that this is effecting a monopoly outside of the scope of the Hunt patent, and that therefore the plaintiffs should be denied all relief.

■ Apparently it is defendant's view that by purchasing the fingers, which are covered by one group of claims in the patent, it automatically also obtained a license under the separate group of machine claims. However, each claim of a patent constitutes a separate grant of monopoly. Sanitary Dist. of Chicago v. Activated Sludge, Inc. et al., 7 Cir., 90 F.2d 727. The district court did not find that the Albright machine equipped with licensed Barker fingers infringed the finger claims of the patent. The finding was that the Albright machine so equipped infringed the machine claims, and this does not amount to an infringement of the very patent rights under which the fingers are licensed, as is contended by defendant. A mere sale does not import a license except where the circumstances plainly indicate that the grant of a license should be inferred. Radio Corp. of America et al. v. Andrea et al., 2 Cir., 90 F.2d 612, 615. The defense of misuse of the patent is without merit and is overruled.

Judgment affirmed.