**HONOLULU OIL CORPORATION and Barker Poultry Equipment Company, Plaintiffs,**

v.

**SHELBY POULTRY COMPANY, a Partnership consisting of William L. Shaw and L. E. Needham, Defendants,** and **Pickwick Company, Defendant-Intervenor.** Civ. No. 1182.

United States District Court W. D. North Carolina, Charlotte Division. July 8, 1960.

Eaton, Bell, Hunt & Seltzer, Charlotte, N. C., Watson, Cole, Grindle & Watson, Washington, D. C., for plaintiffs.

McDougle, Ervin, Horack & Snepp, Charlotte, N. C., Haight, Lockwood & Simmons, Chicago, Ill., for defendants.

WARLICK, District Judge.

This is a patent suit in which the plaintiffs charge infringement. The defendants set up the defenses of invalidity, non-infringement, unfair competition, and alteration of original application specifications.

The plaintiff, Honolulu Oil Corporation is a Delaware corporation with its principal place of business in San Francisco, California. The plaintiff, Barker Poultry Equipment Company is an Iowa corporation with its main office in Ottumwa, in that State. Barker manufactures poultry processing equipment.

The defendant, Pickwick Company is an Iowa corporation with its principal office in Cedar Rapids, Iowa. It, like Barker, manufactures poultry processing equipment. The defendant, Shelby Poultry Company, is a partnership consisting of William L. Shaw and L. E. Needham, which is registered under the laws of North Carolina to do business under the assumed name of Shelby Poultry Company. It operates a relatively small poultry processing plant, in Shelby, North Carolina, having purchased from the defendant Pickwick Company one of its fowl defeathering machines shortly following their being placed on the market.

Honolulu Oil is the owner of the two patents in suit, having had them assigned to it on their purchase from Andrew J. Toti, the inventor thereof. Barker Poultry has an exclusive license under the two patents from Honolulu Oil. Patent number 2,754,539 issuing in July 1956, is a methods patent setting out a means for the defeathering of fowl. Patent number 2,805,443, which was issued in September 1957, is an apparatus patent following up the methods patent. Both patents are the outcome of a Patent Office requirement that the process claims be prosecuted separately from the machine claims as they were originally filed together in the application as is shown by File Wrapper 2,805,443.

Jurisdiction arises under the patent laws of the United States.

The initial complaint was filed on July 17, 1956 the same day that Patent Number 2,754,539 was issued, in which it was charged that Shelby's use of the defendant Pickwick's machine constituted infringement, and the prayer for relief sought an injunction against such infringement.

In its answer the defendant Shelby Poultry Company sets up invalidity of the two patents and non-infringement as defenses thereto and prays that the action be dismissed.

Thereafter the defendant Pickwick Company filed its motion with the court to intervene as a defendant and on such being granted, in its answer alleged invalidity and non-infringement similar to the allegations made by its co-defendant, Shelby Poultry Company, and additionally set up a counterclaim charging unfair competition and sought to restrain it.

Subsequently plaintiffs filed a reply to the counterclaim of the Pickwick Company as the rules require, denying the allegations generally and seeking treble damages, all on account of the alleged willful nature of the defendant's infringement.

The plaintiffs later filed a supplemental complaint to bring into the action the apparatus patent number 2,805,443, which was granted to Honolulu Oil on September 10, 1957, more than one year

after the original complaint had been filed. In due time the defendants answered such supplemental complaint.

The case then being at issue, was heard by the court without a jury.

Before finding the facts as is required by Rule 52, F.R.Civ.P., 28 U.S.C.A. and delving into the merits of this action, it would seem wise to consider the position of the poultry processing industry prior to the patents herein involved. To begin with the patents in suit relate to improvements in picking feathers from poultry.

Within the past twenty odd years the poultry industry has expanded phenomonally in that the commercial processing of chickens in the United States in 1959 was approximately nine billion pounds. This new commercial enterprise obviously brought about a very determined effort on the part of those engaged in such business, to devise some means by which defeathering of chickens could be mechanically done, since this feature appears to have been the bottleneck of the industry, for that from time immemorial poultry had been plucked by hand and handplucking obviously had many disadvantages, all of which had long been recognized in the art. It was slow and laborious, unsanitary, expensive, and obviously involved considerable loss from scuffing, barking, bruising, and breaking of the skin of the fowl.

Innumerable efforts had been made through the years to invent such a machine which would operate mechanically. Time after time some supposed inventor had undertaken to secure a patent on his theory, and many actually were awarded patent grants in this particular field. However, nothing of any particular value to the industry came about until George R. Hunt, on October 27, 1942, was granted a patent for a "feather picking apparatus for fowls and the like"; it being granted on his application filed on November 16, 1939. The method of this patent actually established the present commercial poultry industry, and its use by the industry had the force and effect of putting this new commercial venture on its road to success. From the start it proved successful and when it became obvious that it was meeting the demands of the industry in mechanically plucking feathers from fowl, it soon became the object of a persistent and determined effort by many to copy and infringe and otherwise imitate as is seemingly the rule in every grant of a successful patent.

The Hunt device as shown by the patent "is a hollow drum mounted in a frame, and driven by an electric motor. From the periphery of the drum extend a plurality of flexible fingers projecting at an angle of inclination of about 14 degrees. The fingers are arranged in spaced rows completely around the drum, each row being staggared with respect to the adjacent rows. Each finger has closely spaced screw-thread corrugations extending part way down the fingers from the outer end. In the preferred form the fingers have a tapered bore extending from the outer or free end almost as far as the corrugations extend. The specifications also stated that solid fingers would remove feathers but that the operation was speeded by the use of hollow fingers." Hunt v. Armour & Co., 7 Cir., 185 F.2d 722–724.

This seemed to have answered the problem which confronted not only Hunt but everyone like him engaged in the undertaking of successfully finding a formula for defeathering poultry, and to devise some machine which would avoid the slow, tedious, and expensive process of picking fowl by hand. One learns that there are 8,000 feathers on a chicken, ranging from the large flight feathers on the wing and tail to the small cover feathers, down feathers and pin feathers, and that in plucking a chicken it is very desirable to remove all the feathers without breaking the skin, so that germs may not enter and spoil the flesh of the chicken. Bruising and discoloration of the flesh are likewise objects to be avoided.

This Hunt patent became a source of much litigation and in each contest heard before the courts was declared valid. Judge Duffy of the 7th Circuit, in his opinion in the Hunt case heretofore cited above, sets out the various law suits

heard in the several Circuits, and in each one the validity of the patent was sustained and infringement thereof was found.

Ironically the plaintiff Barker Poultry Equipment Company and the defendant the Pickwick Company both sensing the value of Hunt's patent, became licensees and paid royalties on the patents embracing both the shorter and longer fingers. The courts having held that the Hunt patents embraced the long as well as the short fingers.

The defendant Pickwick Company did not pay royalties on the Hunt patent until it had unsuccessfully defended a case brought against it when charged with infringing this patent. Mueller v. Pickwick Corporation, D.C., 94 F.Supp. 742.

Everyone is aware of the fact that before a chicken is plucked of its feathers it is placed in hot water. That the higher the temperature of the water the more easily the feathers can be removed. The Hunt patent as described made it possible for the operator to press the chicken against the fingers projecting from the revolving drums and by turning the chicken to different positions, all parts of its body would be contacted by the fingers of the machine, and the feathers would be removed by the rubbing or scrubbing action as claimed in the patent. And it seems that the Hunt machine used in this manual form would in the course of some 8–10 seconds, remove up to 95% of the feathers without injury to the delicate outer layer of the chicken's skin.

This process is generally referred to as the manual picking machine. Then again prior to the time when plaintiff's application for patent was filed on September 7, 1951, there was another type picker generally in use known as the automatic type wherein the chicken to be plucked was suspended by its feet in a wire shackle from an overhead conveyor line from which it would be brought into contact with two drums as disclosed in the Hunt machine, all of which shows without question that the Hunt machines were being used both automatically and manually in the process of defeathering poultry.

We come now to a consideration of plaintiff's two patents, the claims therein and their validity. In the initial stages the record discloses that Andrew J. Toti on September 7, 1951, filed in the Patent Office his application entitled "Fowl Defeathering Method" in which he claimed a process and machines for defeathering loose fowl. This application was assigned to the plaintiff Honolulu Oil Corporation under terms of an agreement dated July 10, 1953; and later on April 11, 1956, Toti filed a divisional application, one required by the Patent Office, and claimed the method only. Subsequently this application was likewise assigned to plaintiff Honolulu Oil.

In May 1956 Methods patent No. 2,754,539, was amended by which amendment approximately one fourth of the specification was added, including the description of the manner of operation and the process thereof, which amendments are shown in Column 2, lines 3–16, inclusive, and Column 3, lines 26–45, inclusive, and Column 4, lines 1–4 inclusive, and lines 49 to 75, and Claim 5, lines 1–3.

The infringing devices here charged are poultry pickers manufactured and sold by the Pickwick Company and known to the trade as "Spin-Pik". The Spin-Pik machines and the methods they employ are disclosed in patents granted to R. D. Pitts and another now owned by the defendant Pickwick Co., and numbered 2,777,158 and 159, and granted on January 15, 1957, after having been filed on February 21, 1955. Pickwick began to manufacture and sell these machines during May of 1955, and shortly thereafter sold one of the Spin-Pik machines to the defendant Shelby Poultry Co., who began making use of it immediately upon its arrival and installation.

Claims 1 to 11, of plaintiff's patent No. 2,754,539 directed to a method of poultry picking are charged to have been infringed by the defendant Shelby Poultry Co., and to have been contributorily infringed by the defendant the Pickwick Co.

Claims Nos. 1, 2, 4, 5 and 7 to 13, of plaintiff's patent No. 2,805,443 are charged to be infringed by the defendant Shelby Poultry Company, in the use of the poultry picking machine purchased by the defendant Shelby Poultry from Pickwick, and are charged to be infringed by Pickwick in the manufacture and sale thereof.

After the elimination of much of the legalistic definitions made, the verbiage used and the other words which tend to confuse rather than explain, in the various claims, it would appear that a fair statement of the claims set out in plaintiff's patent No. 2,805,443, the apparatus patent, discloses at most poultry picking machines having a cylindrical assemblage of flexible beaters mounted for rotation, a motor or other means to rotate the assemblage, and means, such as a casing, extending circumferentially around the beater assemblage to confine the poultry so that it may be engaged by the beaters. Thus it would seem that the apparatus patent No. 2,805,443 in its claims 1, 2, and 4 to 13, consist fundamentally for invention in its various language, in the use of a casing or a circular container around an old and well known combination of an assemblage of poultry picking beaters rotated by an electric motor or some other corresponding means. Claim 1, in essence, embraces in substance, at least for all intents and purposes, each and all of the claims made. It reads as follows:

"1. A fowl-picking machine for defeathering loose fowl placed therein comprising the combination of three elements namely (1) an assemblage of flexible, frictional fowl-defeathering beaters mounted for rotation about an axis, (2) means opperatively connected to said assemblage for rotating it rapidly with its beaters, and (3) means positioned next adjacent to said assemblage extending at least partially substantially circumferentially of said assemblage and formed and positioned with respect thereto to confine loose fowl in at least recurrent defeathering engagement with said beaters when said assemblage is rotating yet permitting the loose fowl to be tumbled about to expose every part of the fowl to the defeathering blows of said beaters."

Patent No. 2,754,539 discloses a method of picking poultry which among other things primarily includes confining the birds to, and moving them in a circular path or area while they are being beaten by rotary, frictional, defeathering blows and tumbled over and over so that the blows so administered can presumably reach all parts of the birds. It would seem that the invention claimed in such patent in its various claims 1 to 11, consists fundamentally in subjecting the birds to old and well known rotary, frictional defeathering blows by confining them to the path of such blows and permitting the poultry to be tumbled about, so that all of the parts of such birds can be struck. Among the claims for invention set out in said patent it is found as a fact that Claim No. 2 is best descriptive of all such claims.

"A method of mechanically defeathering loose fowl which comprises confining loose fowl within a substantially circular zone free for tumbling about therein, while subjecting the loose fowl to rapid, mechanical, frictional defeathering, rotary blows traveling in circular paths generally concentric with said zone in a manner which tends to move the loose fowl bodily circumferentially within said zone and tumble the loose fowl about in all directions to expose the loose fowl to receive the defeathering blows all over, including under and over the wings and between the legs until the feathers are substantially all removed."

The use of a generally circular casing to confine and guide objects for frictional engagement with a rotary assemblage of appropriate beaters or other elements and propelled by appropriate means to frictionally engage the objects and remove the outer surface therefrom was

disclosed in a number of prior art patents such as hog debristling machines, fish scaling machines, and vegetable and fruit peelers. Such will be found in a reference to patent No. 1,002,920, issued to J. W. Kohlhepp on September 12, 1911, relating to a machine for dehairing and polishing the carcass of hogs; also patent No. 2,355,405, issued August 8, 1944, to one Vucassovich relating to a machine for removing scales from fish; and finally patent No. 2,131,377, issuing to one Kohl on September 27, 1938, which relates to a means for disintegrating the skin of limes, lemons and oranges.

An analysis of the claims of the above and other patents in the prior art plainly shows that in each the articles being processed were contained in a circular casing for the purpose of permitting them to come in contact with the elements used in dehairing hogs, removing scales from fish, and disintegrating the skins of limes, lemons and oranges.

In each of these prior art machines the hogs, fish, vegetables and fruit being treated were loose and free to be tumbled about, and to be acted upon on all surfaces thereof, in a manner similar to that in which poultry are loose and free to be tumbled about in the machines as is disclosed in plaintiff's patent No. 2,805,443; and I so find that claims 1, 2, and 4 to 13, inclusive, of this patent read directly on one or more of the prior art machines, modified only by the substitution of old and well known rubber poultry picking elements, known to the prior art before 1951, for the corresponding elements employed in the rotary assemblage to debristle hogs, scale fish, or peel vegetables or fruit. And it would seem, and I so find, that to one of ordinary skill in the art, it would have been obvious prior to September 1951 that the substitution of these known poultry picking fingers or beaters for the assemblage of hog scrapers, fish scalers, and other elements would make the old machines suitable for picking poultry.

No structure disclosed in patent Nos. 2,754,539 or 2,805,443 was ever manufactured and sold or commercially used.

In order to demonstrate its operation a device built according to the disclosure of the patents, a poultry picker like that of Figs. 4 and 5 of the patents was made by plaintiff, Barker Poultry Equipment Company, a few months prior to the trial. It is the only machine shown by the evidence to have ever been made following the disclosures of the Toti patents in suit.

This machine as constructed was demonstrated to the court and to those interested in the case when the actual process of defeathering poultry was had; in that demonstration three fowl after having been immersed in water of a proper temperature, were placed in the machine and after being tumbled about for approximately 45 seconds, were found to be fairly well defeathered, however lacking much in being a finished product.

Both plaintiff Barker Poultry and defendant Pickwick Company, competitors in the manufacturing field of the chicken picking industry, are corporations of the State of Iowa and their places of business are possibly 50–60 miles distant from each other in that state. During the trial and since I have been intrigued by the question as to why they came South some 1,200 miles to file this law suit in the Western District of North Carolina, when jurisdiction could have so easily been had in the state of their incorporation, and the issues so conveniently joined there.

The question here to be decided is whether, according to applicable legal standards, these are patentable inventions. After a careful study of the evidence offered I conclude that they are not patentable, for that among other things the elements embraced in each of the two patents are all old to the art and fail to rise to the level of invention.

The courts have always experienced difficulty in defining patentability and it is well nigh impossible to do so except in the most general terms. Judge Soper in Interstate Rubber Products Corp. v. Radiator Specialty Co., 4 Cir., 214 F.2d 546, 548, sets out a very full and lucid definition:

"The touchstone is whether the new thing is beyond the ability of the worker of ordinary skill in the field, and neither the courts nor Congress have been able to offer a more definite test, so that in the end it must be left to the judgment of the courts in controverted cases to apply the formula to the specific facts; and the judges may not endow with the quality of invention every new and useful advance amidst the myriad activities of a resourceful people."

In the Great A. & P. Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, at pages 152–153, 71 S.Ct. 127, 130, 95 L.Ed. 162, a rule is laid down by the court which is fundamental in the patent law.

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

Each patent case therefore in which the issue of invention is raised presents to the courts a separate problem and it is rather difficult to find a sure and positive guide in any prior decision. In Atlantic Works v. Brady, 107 U.S. 192, 2 S. Ct. 225, 27 L.Ed. 438, quoted by Judge Soberoff in American Monorail Co. v. Parks-Cramer, 4 Cir., 245 F.2d 739, 742, is found a statement well applicable to the facts in this case, and one which clearly sets forth the law of patentability.

" 'The process of development in manufactures creates a constant demand for new appliances, which the skill of ordinary headworkmen and engineers is generally adequate to devise, and which, indeed, are the natural and proper outgrowth of such development. Each step forward prepares the way for the next, and each is usually taken by spontaneous trials and attempts in a hundred different places. To grant a single party a monopoly of every slight advance made, except where the exercise of invention somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences.

" 'The design of the patent laws is to reward those who make some substantial discovery or invention, which adds to our knowledge and makes a step in advance in the useful arts. Such inventors are worthy of all favor. It was never the object of those laws to grant a monopoly for every triffling device, every shadow of a shade of an idea, which would naturally and spontaneously occur to any skilled mechanic or operator in the ordinary progress of manufactures. Such an indiscriminate creation of exclusive privileges tends rather to obstruct than to stimulate invention.' "

Under the evidence heard and with this formula in mind, I conclude therefore that the patents issuing to the plaintiffs are not valid, for lack of invention, and accordingly the cause of action of plaintiffs is dismissed.

Counsel will submit a proper decree.