The **MOJONNIER DAWSON COMPANY**,
a corporation, Plaintiff,

v.

**U. S. DAIRIES SALES CORP.**, a corporation, et al., Defendants.

The **MOJONNIER DAWSON COMPANY**,
a corporation, Plaintiff,

v.

**LIQUID PACKAGE EQUIPMENT CO.**, a corporation, et al., Defendants.

**Civ. A. Nos. 54 C 277, 58 C 648.**

United States District Court
N. D. Illinois, E. D.
Nov. 18, 1958.

John F. McCanna, Chicago, Ill., for plaintiff.

Howard W. Clement and Richard E. Voland, Chicago, Ill., for defendants.

LA BUY, District Judge.

Civil Action 54 C 277 is here on mandates in Appeals Nos. 11784 and 11785 from the Court of Appeals for the Seventh Circuit, in a decision dated February 21, 1958 (decision published 251 F.2d 345, certiorari denied 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148. Appeal No. 11784 was by plaintiff and Appeal No. 11785 by the Brasile defendants.

In Appeal No. 11784 the Court of Appeals reversed the judgment of Judge John P. Barnes the District Court 142 F.Supp. 385 insofar as Count I was dismissed for want of equity in holding the Mojonnier reissue patent 23,-830 invalid for unpatentable aggregation, and held claims 1, 6 and 7 of said patent valid in law. It remanded to the District Court the issue of alleged infringement by the Brasile defendants. The decision also reversed the District Court which dismissed Count III of the Second Amended Complaint which charges the Brasile defendants with certain alleged acts of infringement and unfair competition, asserting that the infringement was aggravated, and remanded this for retrial. Instead of retrial of Count III the parties agreed at a pretrial conference with this Court May 27, 1958 to rely on the original trial record. The issues were (1) infringement and (2) aggravation of infringement and unfair competition.

In defendants' Appeal No. 11785 the Court of Appeals reversed the judgment of the District Court dismissing the counterclaim of the Brasile defendants and remanded the cause for further proceedings. The issue involves (1) alleged trade harassment by the plaintiff and (2)

admissibility and sufficiency of defendants' evidence with respect to damage.

Civil Action 58 C 648 was filed April 10, 1958 by the Mojonnier Dawson Company against Liquid Package Equipment Co., Frank Martinetti and Howard E. Garrett for infringement of claims 1, 6 and 7 of the Mojonnier reissue patent 23,830. The action was consolidated with 54 C 277 because both actions are for infringement of the Mojonnier reissue patent 23,830 and there is privity of parties defendants.

These causes have come on to be heard after each party filed briefs, findings of fact, conclusions of law, and order of judgment in compliance with order of this Court as a result of the pre-trial conference.

Prior to oral argument the parties agreed to a settlement of this litigation. Under such agreement the parties stipulated (1) that the Second Amended Complaint be dismissed as against the defendant Eugene Blum with prejudice and without costs to either party; (2) that Count III of the Second Amended Complaint be dismissed as to the defendants Maurice J. Brasile, U. S. Dairies Sales Corp., Milk Container Equipment Corp., and Purity Pack Corp., such dismissal being without prejudice to Count I but otherwise with prejudice and without costs to plaintiff or to any of the defendants; and (3) that defendants' counterclaim be dismissed with prejudice and without costs to defendants or to plaintiff.

Also under such agreement and subject to the order of this Court, the parties consent to a final judgment. In support of such judgment the Court enters the following:

### Findings of Fact (Civil Action 54 C 277).
### The Parties.

1. Plaintiff, the Mojonnier Dawson Company, is an Illinois corporation with its principal place of business at 9151 Fullerton Avenue, Franklin Park, Illinois (PX 1). Plaintiff is the lawful owner of the patent in suit, United States Letters Patent Reissue 23,830 (PX 3), reissued May 18, 1954 from original patent 2,667,990 (PX 2), granted February 2, 1954 to plaintiff as assignee of the inventor Albert B. Mojonnier (PX 4) with the right to recover for all infringements alleged in the complaint (R. 109–16).

2. Defendant, U. S. Dairies Sales Corp., is an Illinois corporation with its office at 643 McHenry Avenue, Woodstock, Illinois (PX 92).

3. Defendant, Milk Container Equipment Corp., is an Illinois corporation with its office at 331 Johnson Avenue, Woodstock, Illinois (PX 91).

4. Defendant, Purity Pack Corp., is an Illinois corporation with its office at 331 Johnson Avenue, Woodstock, Illinois (PX 90).

5. Defendant, Maurice J. Brasile, is a resident of Woodstock, Illinois, residing at 454 Lawndale, Woodstock, Illinois (R. 973).

6. Defendant, Eugene Blum, named in the Second Amended Complaint, has been withdrawn by plaintiff.

7. Unless mentioned individually, the defendants U. S. Dairies Sales Corp., Milk Container Equipment Corp., Purity Pack Corp., and Maurice P. Brasile, are referred to herein as "Brasile defendants".

### The Mojonnier Invention.

8. In March, 1946, Albert B. Mojonnier, the inventor in patent 2,667,990 and reissue thereof 23,830 here in suit, formed the plaintiff corporation. This was a small company having three incorporators and five employees. Mojonnier started making a line of small equipment for dairy plants, including such items as work tables, cutting knives for ice-cream, butter and cheese, and then added a small line of vacuum fillers for filling wines, insecticides, syrups, and chemical solutions, also a piston type filler for food products (R. 109, 165, PX 15, PX 16). At the time of this invention Mojonnier was a highly experienced engineer with a background of some 16 years as an employee of Mojonnier

Brothers Company, Chicago, in designing and manufacturing equipment of a wide variety for the dairy, food and chemical industries, and particularly machines operating on the vacuum principle for filling milk into glass bottles. During this period he became acquainted with all types of filling equipment used in the dairy industry for filling milk containers, namely, the piston type, the displacement type, the siphon type, and the gravity type, in addition to the vacuum type. None of these fillers were satisfactory for small dairy plants for filling milk into paper cartons, nor for the aerosol industry. With this background, Mojonnier made the invention patented in reissue 23,830, claims 1, 6 and 7 of which are to be here interpreted (R. 116–219, 540–623).

9. The Mojonnier invention is especially designed for repetitive production filling of liquids in commercial plants where the filling operations require a high degree of accuracy in the quantity of liquid dispensed at each filling and where the cost of such filling operations is important. In the dairy industry the invention is of particular utility for filling milk into wax or paraffin-treated paper cartons. The invention was a boon to small dairymen because it made available to them for the first time a suitable low-priced filling machine which enabled them to compete with the larger dairy concerns who had large and expensive filling equipment operating on principles quite different from the Mojonnier invention. (Dairy industry testimony: Albert B. Mojonnier, R. 117–220; 603–623; Lee Campbell, R. 809–823; Richard L. Farrell, R. 770–795; Joseph L. Rosen, R. 824–43; Harold Wainess, R. 844–853; Exhibits: PX 73, plaintiff's model W–C–1 Filler; PX 39, plaintiff's model CP Filler; PX 53, "Pure Pak" carton ½ gallon; PX 54, American Can paper carton 1 quart; PX 55, Seal King paper carton, 1 quart; PX 62, Circular plaintiff's "Electromatic" fillers; PX 63, Circular plaintiff's "Electromatic" Model E–Seal King Filler; and PX 68, large scrap book containing articles, publications and clippings, plaintiff's "Electromatic" fillers.)

10. In the aerosol industry the invention revolutionized the practice of filling chemicals, propellants and products into the so-called aerosol "bombs" for spraying or dispensing insecticides, deodorants, shaving soap, whipping cream and many other products. (Aerosol industry testimony: Albert B. Mojonnier, R. 203–207, 603–623; Paul B. Peterson, R. 795–807; Grant V. Noyt, R. 854–863; Exhibits: PX 56, Colgate "Barber Shave" bomb; PX 57, Bridgeport Brass "Goodaire" bomb; PX 64, "Dupont" book on aerosols showing plaintiff's filling machines pages 14, 15; PX 65, Photograph model, plaintiff's aerosol filler for Williams Foam Shave; and PX 66, Photograph model, plaintiff's aerosol filler model I M–30).

## Broad Scope and Liberal Interpretation of Claims 1, 6 and 7.

11. The Court of Appeals in its decision January 15, 1958 made findings material to the scope of the claims in suit. This Court recognizes such findings as defining the essence of the Mojonnier invention and the broad scope of claims 1, 6 and 7, entitling them to liberal interpretation. Significant findings are: "* * * nowhere, except in the claims in suit, is there disclosed a float control for maintaining a 'preselected level' in combination with a dispensing valve and a timer as described which jointly produced the function and result, 'whereby a substantially constant volume of liquid is dispensed each time the solenoid is operated'. This is the 'time controlled uniform flow with constant hydrostatic head, orifice and time.'" (251 F.2d 351)

"The significant fact is that nowhere in the prior art is there disclosed the combination recited in claim 1, and that this new combination was unobvious in the meaning of the statute and produced a highly beneficial result. This new result, which is omitted from the memorandum and findings of the district court, is due to the conjoint action of main-

taining the fluid in the container at a preselected level, a valve for dispensing fluid from the container, and an interval timer for controlling the valve." (251 F.2d 351)

"It is our opinion that Mojonnier's machine embodies a conjunction or concert of old elements which contributed materially to the sum of useful knowledge in both the dairy industry and the aerosol industry and that the whole exceeds the sum of its parts * * * and that the differences between Mojonnier's machine and the prior art are such that his device as a whole would not have been obvious at the time he invented it to a person having ordinary skill in the art." (251 F.2d 354)

Also the Court of Appeals cited authorities (251 F.2d 352, note 5), supporting the principle of patent law "that the claims of a meritorious patent should have a liberal interpretation".

This Court regards as the essence of the Mojonnier invention, the broad combination of elements above pointed out.

### The Accused Filling Machine.

12. There is no controversy concerning the construction and operation of the accused filling machine PX 40. Before trial, on March 16, 1955, counsel stipulated:

"That the structure alleged to be an infringement of the claims (claims 1, 6 and 7 of the patent in suit) is that incorporated in the machine bearing Serial No. HJ SA 3028 being made and sold by the Brasile defendants at the time of filing of this lawsuit, and the machine now being made and sold by the Brasile defendants."

This machine was sold February 18, 1954 by defendant U. S. Dairies to a jobber Valley Sales Company, Inc., Springfield, Massachusetts, and delivered by truck to Monument Farms, Middlebury, Vermont, bill of lading dated February 24, 1954. The construction and operation of this machine is shown by the Fishleigh testimony (R. 300–321) in connection with the following exhib-

its: PX 49–A, large chart (also Appendix "D"), showing valve closed; PX 49–B, large chart (also Appendix "G"), showing valve open; PX 49–C, large chart (also Appendix "F"), sketch of accused filling machine; PX 49–D (also Appendix "G"), photograph of accused filling machine; and PX 49–E, valve lever.

### Infringement of Reissue Claims 1, 6 and 7.

13. The accused filling machine PX 40 infringes claim 1, as established by the Fishleigh testimony in general (R. 232 to 344) and particularly by the testimony explaining wherein the mechanical elements of the claim are present in the structure shown in the drawings of the Mojonnier patent and in chart PX 42, to wit: R. 255–57 with respect to the introduction part of the claim, R. 255–57 with respect to element (1), R. 257 with respect to element (2), R. 257–58 with respect to element (3), R. 259 with respect to elements (4), (5) and (6), R. 259–61 with respect to element (7), and R. 261–62 with respect to element (8); and the testimony explaining with reference to chart PX 50 wherein the mechanical elements of the claim are found in the accused filling machine PX 40, to wit: R. 324 with respect to the introduction part of the claim, R. 324 with respect to element (1), R. 324–5 with respect to element (2), R. 325 with respect to element (3), R. 325–26 with respect to element (4), R. 326–8 with respect to element (5), R. 328–9 with respect to element (6), R. 329 with respect to element (7), and R. 329–30 with respect to element (8); also chart PX 50 which is compiled from charts PX 41–A, PX 41–B, PX 42 and PX 81.

14. Contrary to defendants' argument, the accused filling machine uses all the elements of claim 1, including the full equivalent of elements (5) and (6), chart PX 50. Defendants' solenoid 54 is beneath the container but mounted on the same rod which supports the container. The words "mounted on said container" in element (5) are merely de-

scriptive of location of the solenoid and not its function. Defendants' solenoid 54 is used for the same purpose as plaintiff's solenoid, namely, to operate the dispensing valve. This function is essential in the accused machine and cannot be eliminated. In element (6) the words "extending through said container" are descriptive merely with reference to location of the connection between the solenoid and the valve and do not change the function. In the accused machine the member 7–F shown in PX 49–B and PX 50, or the member 85 shown in DX 46, is located beneath the container merely as an incident to locating the solenoid beneath the container but this member performs the same function as is defined in the claim, namely, "for interconnecting said solenoid and said valve". This function is utilized for opening the valve as described in element (6). The accused machine uses all the elements described in claim 1 to perform the function and obtain the result described in element (8), namely: " * * * to open said valve whereby a substantially constant volume of liquid is dispensed each time said solenoid is energized". Without all the elements of claim 1 the accused filling machine would not operate to produce the intended result.

15. With respect to claim 1, in the accused machine the mounting of the solenoid beneath the container on the same rod on which the container is mounted, so that the whole is one unitary structure, is the full equivalent of plaintiff's solenoid which is mounted directly on the container; in fact, the Mojonnier patent teaches the mounting of the solenoid underneath the container instead of on top as shown in Fig. 5 on sheet 3 of the patent (R. 326–28).

16. With respect to claim 1, in the accused machine the parts interconnecting the solenoid and the valve are the mechanical equivalent of plaintiff's member extending through the container for interconnecting the solenoid and the valve, because these structures operate in substantially the same way to produce the same result (R. 328–29).

17. The specific form and arrangement of elements (5) and (6) in claim 1 are not of essence in considering infringement because the accused filling machine utilizes the full equivalent of such elements and the Court of Appeals found that the essence of the invention was not in the form and arrangement of such elements but in the new combination (finding 11, supra).

18. The accused machine embodies the new combination of elements pointed out by the Court of Appeals and also pointed out by plaintiff's expert (R. 339):

" * * * and that means, because the device maintains a substantially constant hydrostatic head above the orifice, because the valve when opened has a constant orifice or constant orifice factor, and because the valve is opened rapidly and held open for a carefully predetermined time, those three factors are present in the accused machine as they are in the Mojonnier patent, to provide for a substantially constant volume of liquid to be dispensed each time the solenoid is energized."

19. The accused filling machine PX 40 infringes claim 6, as established by the Fishleigh testimony in general (R. 232 to 344) and particularly by the testimony explaining wherein the mechanical elements of the claim are present in the structure shown in the drawings of the Mojonnier patent and in chart PX 43, to wit: R. 263 with respect to the introduction part of the claim, R. 263–64 with respect to element (1), R. 264–66 with respect to element (2), R. 266 with respect to element (3), R. 266–67 with respect to element (4), R. 267–68 with respect to element (5), and R. 268–69 with respect to elements (6), (7), (8) and (9); and the testimony explaining with reference to chart PX 51 wherein the mechanical elements of the claim are found in the accused filling machine PX 40, to wit: R. 331–32 with respect to the introduction part of the claim, R. 332 with respect to element (1), R. 332–33 with respect to

element (2), R. 333–34 with respect to element (3), R. 334–35 with respect to element (4), R. 335–37 with respect to element (5), and R. 337–38 with respect to elements (6), (7), (8) and (9); also chart PX 51 which is compiled from charts PX 41–A, PX 41–B, PX 42 and PX 81.

20. The accused filling machine PX 40 infringes claim 7, as established by the Fishleigh testimony in general (R. 232 to 344) and particularly by the testimony explaining wherein the mechanical elements of the claim are present in the structure shown in the drawings of the Mojonnier patent and in chart PX 44, to wit: R. 270–71 with respect to the introduction part of the claim, R. 271–72 with respect to elements (1), (2), (3) and (4), R. 272 with respect to elements (5) and (6), R. 272–73 with respect to element (7), R. 273 with respect to element (8), R. 273–74 with respect to element (9), and R. 275 with respect to element (10); and the testimony explaining with reference to chart PX 52 wherein the mechanical elements of the claim are found in the accused filling machine PX 40, to wit: R. 338–39 with respect to the introduction part of the claim, R. 339 with respect to elements (1) and (2), R. 340 with respect to elements (3) and (4), R. 340–41 with respect to element (5), R. 341 with respect to element (6), R. 341–42 with respect to element (7), R. 342 with respect to element (8), R. 343 with respect to element (9), and R. 343–44 with respect to element (10); also chart PX 52 which is compiled from charts PX 41–A, PX 41–B, PX 42 and PX 81.

21. Infringement of claims 6 and 7 is not avoided on the argument that in the accused machine the valve element 558–20 is not continuously held open throughout the time period. These claims contain no such limitation but, on the contrary, element (7) of claim 6 defines a "timer having a starting switch and operating to control a continuous uninterrupted time period in response to the initial actuation of said switch" and element (8) "said timer controlling said valve to continuously hold open said valve

through said time period * * * whereby to deliver said predetermined flow and quantity of fluid in a single operation * * *." The accused machine performs this identical function and it is immaterial whether the valve sleeve member 558–16 has a slight additional movement before the valve opens. The time period contemplated by these claims is the time the valve is held open. The essential fact in the accused machine is that a predetermined flow and quantity of fluid is delivered by continuously holding open the value throughout a continuous uninterrupted time period.

22. Reversing the valve parts in the accused filling machine so that the outer valve member is moved to open the valve instead of moving the inner valve member to open the valve as in plaintiff's machine, is the full equivalent of the claims in suit and does not avoid infringement.

23. Whether or not the valve construction used in the accused filling machine performs a function in addition to that of plaintiff's valve is immaterial and irrelevant to the issue of infringement. Defendants contend that they avoid infringement by making the outer valve member 558–16 movable so that in the dispensing operation it projects down into the paper carton in the manner shown in chart PX 49–B, Appendix chart "E". This is of no consequence because the fact remains that defendants' valve opens and closes in coordination with the other elements of the claims in suit and performs the same function in substantially the same way as is performed by plaintiff's valve. Patent 2,847,145 granted August 12, 1958 to defendant Brasile for a later specific valve form is immaterial to the issue of infringement.

24. Dismembering the accused machine as contended by defendants by eliminating spring 88 in DX 46 or the coiled spring at the bottom of the sleeve member of the valve as shown in PX 49–A and PX 50 is not material or relevant to the issue of infringement because the elimination of such part would make the accused machine inoperative.

25. Each element of claims 1, 6 and 7 or its mechanical equivalent is found in the accused filling machine PX 40.

26. The proceedings in the Patent Office with respect to claim 1 show by preponderance of the record that claim 1 was allowed because it was for a new combination giving a new result (Patent Office file wrapper DX 7, pages 45–46, 51 to 55). Contrary to defendants' contention, such proceedings do not set up an estoppel to claim the doctrine of equivalents in interpreting claim 1. This is not a case of recapturing claims alleged to have been surrendered by proceedings in the Patent Office. The Court of Appeals decision, pages 8 to 15, confirms the broad scope of claim 1.

27. No acts, expressed or implied, were taken by the applicant Albert B. Mojonnier, or the patentee the Mojonnier Dawson Company, or by their patent solicitor, during the prosecution of the Mojonnier application for the original patent 2,667,990 or that of the reissue patent 23,830, before the United States Patent Office, which would constitute a file wrapper estoppel with respect to claim 1 and in any way bar the doctrine of equivalents in the interpretation of this claim with respect to infringement by the accused filling machine PX 40.

28. Plaintiff and defendant Brasile were parties to a contract PX 58, entered into December 29, 1951. Authenticity of this contract is stipulated by counsel. At the time of entering into this contract plaintiff had been engaged for several years in making and selling its "Electromatic" filling machine for both the dairy industry and the aerosol industry. (Plaintiff's filler applied to "Zinpak" cartons, PX 69, R. 207–08, 833–38, and to "American Can" cartons PX 34, R. 218, 770–83). The contract was entered into as a result of Brasile soliciting plaintiff to apply the "Electromatic" filler to filling milk into "Pure Pak" paper cartons PX 53 (R. 541–50). These cartons had been on the market for many years, made by Ex-Cell-O Corporation of Detroit (R. 151–55).

Under this contract PX 58 Polivka and Brasile, the "purchasers", were given the exclusive right to sell and distribute plaintiff's filler for Pure Pak cartons. The contract was expressly predicated on the Mojonnier invention. The preamble sets forth:

"Whereas, the purchasers have suggested to the seller that the seller manufacture a filling machine (hereinafter referred to as 'filler') to fill pre-formed Pure Pak paper bottles with milk or other similar dairy products; and

"Whereas, the seller has designed a filler embodying certain principles and designs developed or invented by the seller and upon or with respect to which seller is the owner of one or more patents or applications for patents, as follows:

"Application for Patent, Serial No. 85,278 filed with the United States Patent Office on April 4, 1949."

Application for patent Serial No. 75,278 resulted in patent 2,667,990 and reissue 23,830, here in suit. From the outset of the relations between plaintiff and Brasile the Mojonnier invention was the essential subject matter and Brasile is charged with knowledge of the existence of plaintiff's patent application.

29. Within a year operating under the contract PX 58, Brasile started to make a filling machine using the Mojonnier invention without knowledge of plaintiff (Richardson R. 864–946, Brasile R. 984–1111, Allen R. 1415–47, Botts R. 2180–96). This machine is DX 33, photographs PX 71 and 113, and drawings PX 70 and 72 to 79 inclusive. Jack B. Richardson made these drawings for Brasile, under his instructions and for his benefit (R. 907–08). The first drawing PX 70 was completed by Richardson December 10, 1952 (R. 871–74). At the trial Richardson disclaimed any knowledge of the Mojonnier filler at the time he made this drawing (R. 877) but the drawing plainly and accurately shows a Mojonnier filler. It shows at "C" a solenoid such as

Mojonnier's solenoid 54, PX 41–A, and a rod extending down from the solenoid into the tank "A" such as Mojonnier's rod 62 for operating the valve as in PX 41–B. Richardson said the solenoid "C" was to be operated "by the present time device that Mr. Mojonnier had on his filler" (R. 877) and it was the intention to use an electronic timer (R. 878) and he was instructed by Brasile to use an electronic timer in conjunction with the Mojonnier filler in making this machine DX 33 (R. 878–79). Brasile testified that this filling machine DX 33 was made entirely on his behalf and for his benefit (R. 1011–12, 1057). This machine DX 33 was made at the Botts Welding Company (R. 887–88) and Richardson was actively engaged in making it although the work was done by men employed at Botts. Richardson's first drawing PX 70 of the machine which resulted in DX 33 shows the use of a cam-operated timing means instead of the electronic timer used in the Mojonnier filler. Drawing PX 70 shows at "F" the modified valve construction used in the accused filling machine PX 40 (R. 890) with an outside sleeve member and a stationary ball valve, the reversal of plaintiff's valve construction. This is the valve construction which defendants contend does not infringe claims 1, 6 and 7. Although Richardson testified that he knew nothing about the Mojonnier filler (R. 877), he later testified that the calculations of sizes, quantities and timing shown at the lower right-hand corner of PX 70 came from the Mojonnier filler (R. 889–90, 895–96–97). Richardson testified that model DX 33 was made for Brasile (R. 887–88). This is corroborated by Botts (R. 2180–88) and by Brasile (R. 1003, 1010–11–12). Model DX 33 is shown in photograph PX 71 (R. 891 and 903). Richardson did not know whether the valve construction shown in his drawings and used in model DX 33 would actually operate to fill, but Brasile told him that to all intents and purposes they were going to use the Mojonnier filler in this DX 33 (R. 927). In fact this valve in DX 33 did operate to dispense liquid. Ex-Cell-O made tests of DX 33 and gave a de-

tailed technical report PX 80 dated July 2, 1953. In these tests water was dispensed into individual ½ gallon containers. The test report for the "First Group" tests numbered 1 and 2 shows the quantity dispensed was 1780 c.c. and 1720 c.c., respectively. This is a variation of 60 c.c. This variation is three times greater than the minimum trade requirement (R. 932). This Ex-Cell-O report showed that DX 33 was unsatisfactory for commercial use. Richardson personally carried this report back to Woodstock and gave it to Brasile (R. 933). Brasile started to make machine DX 33 in February, 1953 (R. 1011). Richardson said it was made in a period from March to June, 1953 (R. 892). In this period Brasile was under contract PX 58 with plaintiff and machine DX 33 was unknown to plaintiff.

30. The Ex-Cell-O test report of DX 33 showed that this filling machine was not satisfactory for manufacture. Brasile in July, 1953 started to make a second filling machine which he also sent to Ex-Cell-O for testing. This second machine is shown in the large sketch PX 81. It uses the same filling mechanism as used in DX 33 and the accused filling machine PX 40 (R. 890, 941–43). Instead of using the unsatisfactory cam-operated timing mechanism of DX 33, Brasile used in his second machine PX 81, the electronic timing mechanism which was used so successfully in the Mojonnier invention (R. 941–43 and Ex-Cell-O report PX 82). This second filling machine physically is not in evidence, but the testimony of Richardson and Brasile shows that the filling mechanism was of the same construction as used in Brasile's first filler DX 33, based on the Richardson drawings PX 70 and PX 72 to 79. Richardson testified to the making of this second filling machine (R. 933–962). He refers to this machine as a new "unit" which they started to build after DX 33 came back from Ex-Cell-O about July 8, 1953 (R. 936). He said that this new unit was made under instructions from Brasile (R. 938), that the new unit had the same valve construction as shown in drawings

PX 70 and PX 72 to 79 inclusive (R. 942), and that it had the same solenoid operation and electronic timer "the whole thing you see there" as in the accused machine PX 40 (R. 934). Brasile submitted this second filling machine to Ex-Cell-O in the fall of 1953 for the purpose of having them make tests and also to manufacture the machine. On September 28, 1953 Ex-Cell-O gave a test report on this, PX 82 (R. 942 to 956). At this time Brasile stopped corresponding with Ex-Cell-O because he could not wait for them to manufacture this second filler. Brasile and Richardson then started making parts and going into manufacture of the filler which is the accused filling machine PX 40 (R. 1073). In the short period from October to December, 1953 Brasile was able to engage in production manufacture of the accused filling machine PX 40 (R. 1075). Brasile continued to use the variation in the valve construction which he had been experimenting with since as early as December 12, 1952 (his first drawings PX 70 and the follow-up drawings PX 72 to 79).

31. Defendant Brasile caused to be incorporated defendant Milk Container Equipment Corp., September 2, 1953 (PX 91) for the purpose of manufacturing the accused filling machine PX 40, and was its president (R. 1023–24).

32. Defendant Brasile caused to be incorporated defendant Purity Pack Corp., September 2, 1953 (PX 90) which engaged in selling the accused filling machine PX 40, and Brasile was its president (1020–22). Purity Pack Corp. in 1957 and 1958 was actively selling the accused filling machine PX 40 manufactured exclusively for it by Liquid Package Equipment Co., defendant in Civil Action 58 C 648, infra, as shown by the answer in that case.

33. Defendant Brasile caused to be incorporated defendant U. S. Dairies Sales Corp., December 18, 1953 for the purpose of selling the accused filling machine PX 40, and was its president (R. 1024–25), and also its sales manager (R. 973). At the time of the trial, May, 1955, this company was selling filling machines

PX 40 manufactured by defendant Milk Container Equipment Corp. (R. 1025). U. S. Dairies sold the accused filling machine PX 40 which is in evidence (R. 976–77).

34. Since defendants U. S. Dairies Sales Corp., Milk Container Equipment Corp., and Purity Pack Corp. were formed by defendant Brasile for the purpose of manufacturing and selling the accused filling machine PX 40, and with Brasile as president of each such companies, they are charged with full knowledge of plaintiff's prior patent rights and of all acts and activities of Brasile in his relations with plaintiff, and under these circumstances this Court finds that defendants U. S. Dairies Sales Corp., Milk Container Equipment Corp. and Purity Pack Corp., participated as joint tort-feasors with defendant Brasile in the infringement of plaintiff's reissue patent.

35. Defendant Maurice J. Brasile individually is liable for the infringement of claims 1, 6 and 7 of reissue patent 23,-830. Brasile personally committed the acts from which the infringement stemmed and personally and for his sole benefit caused to be made and copied from plaintiff's filler, a first filling machine DX 33 and then the accused filling machine PX 40.

36. There is no proof that Brasile acted within the scope of official duties as an officer of any of the defendant companies or that he was authorized by any such companies to perform the acts of infringement set forth in these findings.

37. All the activities of Brasile in making, using and selling filling machines using the Mojonnier invention stated in findings 29 to 33 inclusive, supra, were without knowledge or consent of plaintiff.

38. Brasile personally is the owner of patent 2,847,145, copy of which is attached to defendants' brief on remand, page 17. This shows the valve construction drawn by Richardson in making Brasile's filling machine DX 33 and used in the accused filling machine PX 40. The inference is that Brasile personally is the real party in interest with respect to the accused filling machine PX 40.

.

**Findings of Fact (Civil Action 58 C 648).**

39. Plaintiff, the Mojonnier Dawson Company, and defendants Purity Pack Corp. and Maurice J. Brasile, are parties in Civil Action 54 C 277.

40. Defendant, Liquid Package Equipment Co., is a Delaware corporation doing business and having a principal place of business at Route 47, Woodstock, Illinois.

41. Defendants, Frank Martinetti and Howard E. Garrett, are residents and inhabitants of the Northern District of Illinois, Eastern Division.

42. Defendants, Liquid Package Equipment Co., Frank Martinetti and Howard E. Garrett admitted in their answer that they manufactured and sold filling apparatus identical in all material respects with the accused filling machine in Civil Action 54 C 277, that from July, 1956 to October 1, 1957 said filling apparatus was manufactured solely by said Frank Martinetti and Howard E. Garrett and exclusively for distribution and sale by Purity Pack Corp., a defendant here and in Civil Action 54 C 277, and that from October 1, 1957 down to the date of said answer said filling apparatus was manufactured solely by said Liquid Package Equipment Co., and exclusively for distribution and sale by said Purity Pack Corp.

43. Defendants, Liquid Package Equipment Co., Frank Martinetti and Howard E. Garrett, by their answer have relied on substantially the same defenses as pleaded by the defendants in Civil Action 54 C 277.

**Conclusions of Law (Civil Action 54 C 277).**

1. The Court has jurisdiction of the parties and of the subject matter.

2. Claims 1, 6 and 7 of United States Letters Patent Reissue No. 23,830 are valid in law by decision of the Court of Appeals for the Seventh Circuit, dated January 15, 1958 (251 F.2d 345, certiorari denied 356 U.S. 975, 78 S.Ct. 1139, 2 L.Ed.2d 1148.

3. Reissue patent 23,830 is meritorious and its claims should have a liberal interpretation. Mojonnier Dawson Company v. U. S. Dairies Sales Corp., 7 Cir., 1958, 251 F.2d 345; Hunt v. Armour, 7 Cir., 1951, 185 F.2d 722.

4. The essence of the Mojonnier invention in claims 1, 6 and 7 of said reissue patent is the combination of elements of broad scope expressed by the Court of Appeals in its decision January 15, 1958.

5. The judgments of the Patent Office officials, together with that of the Court of Appeals, are entitled to great weight and are overcome only by clear proof, and every reasonable doubt should be resolved against him who attacks the interpretation of a patent contrary to such judgments.

6. The proceedings in the Patent Office with respect to claim 1 of Mojonnier patent 2,667,990, which is claim 1 of reissue patent 23,830, do not set up an estoppel to the doctrine of equivalents in interpreting claim 1.

7. Claims 1, 6 and 7 of said reissue patent are not limited to the exact details of the specification, but include all equivalents which perform the same function in substantially the same way and accomplish substantially the same results.

8. The accused filling machine Plaintiff's Exhibit 40 infringes claims 1, 6 and 7 of said reissue patent because said machine does the same work in substantially the same way and accomplishes the same result as the invention defined in said claims, even though said machine differs in some details which are the full equivalent of the claimed invention. Union Paper Bag Machine Co. v. Murphy, 97 U.S. 120, 24 L.Ed. 935; Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 28 S.Ct. 748, 52 L.Ed. 1122; Miller v. Eagle Mfg. Co., 151 U.S. 186, 207, 14 S.Ct. 310, 38 L.Ed. 121; Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097; Sanitary Refrigerator Co. v. Winters, 280 U.S. 30, 42, 50 S.Ct. 9, 74 L.Ed.

147; Artmoore Co. v. Dayless Mfg. Co., Inc., 7 Cir., 1953, 208 F.2d 1; Chicago Lock Co. v. Tratsch, 7 Cir., 1934, 72 F.2d 482; Hunt v. Armour & Co., 7 Cir., 1951, 185 F.2d 722; Apex Electrical Mfg. Co. v. Maytag Co., 7 Cir., 1941, 122 F.2d 182; Borg Warner Corporation v. Mall Tool Co., 7 Cir., 1955, 217 F.2d 850; Nordberg Mfg. Co. v. Woolery Machine Co., 7 Cir., 1935, 79 F.2d 685, 692; Adam v. Folger, 7 Cir., 1903, 120 F. 260; Simplex Appliance Co. v. Star Can Opener Co., 7 Cir., 1903, 37 F.2d 491.

9. The accused filling machine Plaintiff's Exhibit 40 infringes claims 1, 6 and 7 of said reissue patent because said machine clearly falls within each of said claims and includes all of the elements, or the mechanical equivalent of each of the elements, and infringement is not avoided by a mere change of form or location of parts. Chicago Lock Co. v. Tratsch; Artmoore Co. v. Dayless; Adam v. Folger; Apex Electrical Mfg. Co. v. Maytag.

10. Infringement is not avoided by making additions or improvements. Temco Electric Motor Co. v. Apco, 1928, 275 U.S. 319, 48 S.Ct. 170, 72 L.Ed. 298; Monroe Body Co. v. Herzog, 6 Cir., 1926, 13 F.2d 705.

11. Defendant Maurice J. Brasile individually is liable for the infringement.

12. Defendants U. S. Dairies Sales Corp., Milk Container Equipment Corp. and Purity Pack Corp. are liable for the infringement.

13. A permanent injunction be issued out of and under the seal of this Court restraining defendants Maurice J. Brasile, U. S. Dairies Sales Corp., Milk Container Equipment Corp., and Purity Pack Corp., their officers, agents, servants, employees, privies, successors and assigns, and each of them, from directly or indirectly making, using or selling, or causing to be made, used or sold, any dispensing or filling apparatus embodying the invention defined in claims 1, 6 and 7, or any of them, of United States Letters Patent Reissue 23,830, and from in any way infringing upon said claims or upon the rights of plaintiff under said claims.

14. Plaintiff is entitled to a judgment against defendants Maurice J. Brasile, U. S. Dairies Sales Corp., Milk Container Equipment Corp., and Purity Pack Corp., their officers, agents, servants, employees, privies, successors and assigns, and each of them, for an accounting against said defendants for damages on account of said infringement and for costs of this suit.

15. The equities in this action are with plaintiff and plaintiff prevails over the defendants.

### Conclusions of Law (Civil Action 58 C 648).

16. Civil Action No. 58 C 648 is properly consolidated with Civil Action 54 C 277.

17. Defendants have infringed claims 1, 6 and 7 of United States Letters Patent Reissue No. 23,830 by the manufacture and sale of a filling machine identical in all material respects with the accused filling machine Plaintiff's Exhibit 40 in Civil Action No. 54 C 277.

18. A permanent injunction be issued out of and under the seal of this Court restraining defendants Liquid Package Equipment Co., Frank Martinetti and Howard E. Garrett, their officers, agents, servants, employees, privies, successors and assigns, and each of them, from directly or indirectly making, using or selling, or causing to be made, used or sold, any dispensing or filling apparatus embodying the invention defined in claims 1, 6 and 7, or any of them, of United States Letters Patent Reissue 23,830, and from in any way infringing upon said claims or upon the rights of plaintiff under said claims.

19. Plaintiff is entitled to a judgment against defendants Liquid Package Equipment Co., Frank Martinetti and Howard E. Garrett, their officers, agents, servants, employees, privies, successors and assigns, and each of them, for an ac-

counting against said defendants for damages on account of said infringement, and for costs of this suit.

20. The equities in this action are with plaintiff and plaintiff prevails over the defendants.

The Court is informed by counsel that the parties have entered into a settlement agreement with respect to damages and costs and granting to defendant Liquid Package Equipment Co. a license to manufacture and sell the accused filling machine. Let counsel for plaintiff prepare a judgment in accordance herewith.